**CIBA–GEIGY CORPORATION,**
**Plaintiff–Appellant,**

v.

**UNITED STATES, Defendant–Appellee.**

**No. 99–1441.**

United States Court of Appeals,
Federal Circuit.

Decided and Reissued: Aug. 11, 2000.

Joseph S. Kaplan, Ross & Hardies, of New York, New York, argued for plaintiff-appellant.

John J. Mahon, Assistant Branch Director, International Trade Field Office, Commercial Litigation Branch, Civil Division, Department of Justice, of New York, New York, argued for defendant-appellee. With him on the brief were David W. Ogden, Assistant Attorney General; David M. Cohen, Director, of Washington, DC; and Joseph I. Liebman, Attorney in

Charge, International Trade Field Office. Of counsel was Chi S. Choy, Attorney, Office of Assistant Chief Counsel, International Trade Litigation, U.S. Customs Service, of New York, New York.

Before MICHEL, LOURIE and RADER, Circuit Judges.

MICHEL, Circuit Judge.

Ciba–Geigy Corporation ("Ciba") appeals from a summary judgment of the United States Court of International Trade upholding a United States Customs Service ("Customs") classification of its imported color formers as "synthetic organic coloring matter" under Heading 3204 of the Harmonized Tariff Schedule of the United States ("HTSUS"). *See Ciba–Geigy Corp. v. United States*, 44 F.Supp.2d 207 (C.I.T.1998). Ciba filed suit challenging the Customs decision to classify its products under HTSUS Heading 3204 rather than as "inks" under Heading 3215. On the government's motion for summary judgment, the Court of International Trade sustained the Customs classification and dismissed the action. Because we hold that the chapter notes to Chapters 29 and 32 explicitly prohibit classification of such products anywhere in Chapter 32 except Heading 3204, we affirm the judgment of the Court of International Trade classifying Ciba's color formers in Heading 3204.

## BACKGROUND

There is no dispute between the parties concerning the basic characteristics of the imported merchandise in question. The color formers, known by their brand name "PERGASCRIPTS," are synthetic organic coloring matter used in the manufacture of carbonless and thermal copy paper. To produce carbonless copy paper, PERGASCRIPT powders are dissolved in and mixed with other ingredients to form a dispersion that is coated on one side of a first sheet of paper, the other side of which is the top sheet of a form that is to be produced in duplicate (*e.g.*, a credit card authorization slip). The top side of a second sheet is coated with an activator. When the top side of the first sheet is written on, the pressure causes the two coated surfaces to react in such a way that color is produced on the second sheet, reproducing what was written on the first sheet. PERGASCRIPTS are also used in making thermographic paper. Thermographic paper is used for faxes and similar products where the application of heat to paper that has been coated with a dispersion of PERGASCRIPTS and other materials results in the formation of an image.

In addition to agreeing on the end uses of PERGASCRIPTS, both parties agree that PERGASCRIPTS are "separate chemically defined elements or compounds" and also "synthetic organic coloring matter." In fact, both parties agree that, based on these characteristics, the PERGASCRIPTS are properly classified in Chapter 32 of the HTSUS and are described in Heading 3204.

Chapter 32, which both parties agree is the proper chapter-level classification for PERGASCRIPTS, encompasses "tanning or dyeing extracts; tannins and their derivatives; dyes, pigments and other coloring matter; paints and varnishes; putty and other mastics; [and] inks." Heading 3204 provides for:

[s]ynthetic organic coloring matter, whether or not chemically defined; preparations as specified in note 3 to this chapter based on synthetic organic coloring matter; synthetic organic products of a kind used as fluorescent brighteners or as luminophores, whether or not chemically defined.

HTSUS, Chap. 32, 3204 (1988). Heading 3215 encompasses "inks" of various sorts. Note 1(a) of Chapter 32 states that Chapter 32 does not cover the following:

[s]eparate chemically defined elements or compounds (except those of heading *3203 or 3204*, inorganic products of a kind used as luminophores (heading 3206), glass obtained from fused quartz or other fused silica in the forms provided for in heading 3207, and also dyes

and other coloring matter put up in forms or packings for retail sale, of heading 3212);

HTSUS, Chap. 32, Note 1(a) (1992) (emphasis added). An additional note to Chapter 32 specifies that Heading 3204 does not apply to the following:

pigments dispersed in nonaqueous media, in liquid or paste form, or a kind used in the manufacture of paints, including enamels (heading 3212), or to other preparations of heading 3207, 3208, 3209, 3210, 3212, 3213 *or 3215.*

HTSUS, Chap. 32, Note 3 (1992) (emphasis added).

Chapter 29 of the HTSUS covers "organic chemicals." Both parties agree that PERGASCRIPTS generally fall within the definition of "organic chemicals:" Note 2(f) to Chapter 29, however, excludes the following from Chapter 29:

[c]oloring matter of vegetable or animal origin (heading 3203), *synthetic organic coloring matter, synthetic organic products of a kind used as fluorescent brightening agents or as luminophores (heading 3204)* and dyes or other coloring matter put up in forms or packings for retail sale (heading 3212).

HTSUS, Chap. 29, Note 2(f) (1992) (emphasis added).

Because PERGASCRIPTS are undeniably "synthetic organic coloring matter" and "separate chemically defined compounds," Customs did not classify them in Chapter 29 but in Chapter 32 in subheadings 3204.19.40 and 3204.19.50 as other "synthetic organic coloring matter, whether or not chemically defined." Those subheadings carry a duty rate of 15% or 20% ad valorem. Ciba, however, claimed that all of the merchandise was classifiable as "ink, other than printing ink or drawing ink," under subheading 3215.90.50 with a duty of 1.8% ad valorem. Alternatively,

Ciba contended that the PERGASCRIPTS were classifiable under 3215.90.50 as unfinished inks in accordance with General Rule of Interpretation ("GRI") 2(a).[1] Ciba challenged the Customs classification in the Court of International Trade.

On the government's motion for summary judgment, the Court of International Trade concluded that Note (1)(a) precluded classification under Heading 3215, thereby rendering Note 3 irrelevant. Because Note 3 was not relevant, the court also held that the factual question of whether the PERGASCRIPTS are ink was not a material fact in dispute. *See Ciba–Geigy,* 44 F.Supp.2d at 214. In its opinion, the Court of International Trade recognized that the word "of" in Note (1)(a) ("except those of heading 3203 or 3204"), when viewed in isolation, left some ambiguity about whether that note permitted separate chemically defined compounds to be classified under Chapter 32 only if they were classified in Heading 3203 or 3204, or if the mere fact that a separate chemically defined compound was described in Heading 3204 was sufficient for inclusion in Chapter 32 even if the compound was ultimately classified elsewhere in the Chapter, *e.g.,* in Heading 3215. Nevertheless, the trial court found no ambiguity when the note was read as a whole, holding:

Had Congress intended separate chemically defined compounds to be classifiable in Heading 3215, it could easily have listed this heading as one of the specific exceptions to the general exclusion of such products from Chapter 32. The fact that it did not, in combination with Note 1(a), makes clear Congress' intent to exclude all separate chemically defined compounds from classifications in Heading 3215.

classified in Heading 3215 generally, we do not distinguish between finished and unfinished articles or among various subheadings in this opinion. We refer, instead, only to Headings 3204 and 3215.

---

1. GRI 2(a) provides that a reference to an article in a heading shall be taken to include incomplete or unfinished versions of the article that have the essential character of the finished article.

As the critical question in this appeal is whether or not the PERGASCRIPTS can be

*Id.* at 212. The court then determined that it was not entirely clear, due to an insufficiency of factual information, whether the subheadings of Heading 3204 under which Customs had classified the PERGASCRIPTS were the appropriate classifications and denied the government's motion to that limited extent, "without prejudice to the filing of an additional motion for summary judgment upon completion of any further discovery." *Ciba–Geigy,* slip op. (unamended) at 15–16. The government then moved to amend the judgment to sustain the classification of the PERGASCRIPTS under subheadings 3204.19.40 and 3210.19.50 and to dismiss the action because Ciba had failed to meet its burden of proof to overcome the statutory presumption of correctness which is afforded Customs determinations. Ciba did not oppose the motion and the trial judge entered an order granting the government's motion to amend and dismissed the action. Ciba filed a timely appeal with this court, which has jurisdiction under 28 U.S.C. § 1295(a)(5) (1994).

## DISCUSSION

Ciba asserts that the language of Note 1(a) of Chapter 32 is ambiguous and that the Court of International Trade misinterpreted that note to render Note 3 of the same chapter irrelevant, thereby erroneously granting summary judgment rather than resolving the disputed factual issue of whether PERGASCRIPTS are "ink." Ciba argues that the correct interpretation of the word "of" in Note 1(a) of Chapter 32 is that a separate chemically defined element or compound need only be *described by* 3204 rather than *classified under* 3204 to fall within Chapter 32. The government responds that the language of Note 1(a) of Chapter 32 is unambiguous on its face and plainly restricts classification of separate chemically defined elements or compounds, such as PERGASCRIPTS, to Headings 3203 or 3204. We agree with

the government and affirm the decision of the trial court holding that PERGASCRIPTS, as separate chemically defined compounds, are excluded from Chapter 32 unless classified in Heading 3203, 3204, 3206, 3207 or 3212, as specified in Note 1(a) of that Chapter.

We review the Court of International Trade's grant of summary judgment in a Customs classification case for correctness as a matter of law, deciding *de novo* whether genuine issues of material fact exist. *See Baxter Healthcare Corp. of Puerto Rico v. United States,* 182 F.3d 1333, 1337 (Fed.Cir.1999) The ultimate question of the proper interpretation of tariff terms, including the chapter notes, is also a question of law, subject to *de novo* review. *See Mita Copystar Am. v. United States,* 21 F.3d 1079, 1082 (Fed.Cir.1994). Under 28 U.S.C. § 2639(a)(1)(1994), a classification of merchandise by Customs is presumed to be correct. Therefore, Ciba bears the burden of proof in challenging the classification of PERGASCRIPTS under Heading 3204. *See Mita,* 21 F.3d at 1082. In addition, we note that there is no issue of *Chevron*[2] deference in this case, as the government has only asked us to rely on the plain language of the HTSUS. *See International Light Metals v. United States,* 194 F.3d 1355, 1361 (Fed.Cir.1999).

The only issue before this court then is whether Note 1(a) precludes classification of PERGASCRIPTS in Heading 3215. To decide this issue we do not need to decide if, in the absence of Note 1(a), PERGASCRIPTS could be classified as "ink," but rather we may assume for the purposes of this appeal that PERGASCRIPTS are indeed ink. As PERGASCRIPTS are "separate chemically defined compounds, are synthetic organic coloring matter, and are also inks," Ciba argues the trial court should have considered Chapter 29 and Headings 3204 and 3215 of Chapter 32 as possible classifications for the PERGAS-

---

**2.** *Chevron U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

CRIPTS. GRI 1 requires that classification be "determined according to the terms of the headings and any relative section or chapter notes." GRI 1 (1998); *see also Baxter Healthcare Corp. of Puerto Rico v. United States*, 998 F.Supp. 1133, 1139 (C.I.T.1998), *aff'd*, 182 F.3d 1333 (Fed.Cir. 1999) ("[A] court first construes the language of the heading, and any section or chapter notes in question to determine whether the product is classifiable under the heading."). Thus, in interpreting the HTSUS with regard to PERGASCRIPTS, we look to the language of the relevant headings and the chapter notes of Chapters 29 and 32.

Ciba argues that the phrase "of heading ... 3204" in the Note 1(a) is ambiguous and is best interpreted to merely require that a product be *prima facie* classifiable under Heading 3204 to be included in Chapter 32. The note does not, Ciba argues, direct where in Chapter 32 a specific "synthetic organic coloring matter" must be classified once it is included in Chapter 32 as a result of being *prima facie* classifiable in Heading 3204. Ciba presents two arguments to support its interpretation of Note 1(a).

First, Ciba asserts that Customs and the Court of International Trade interpreted Note 1(a) in a manner that is inconsistent with the overall scheme of the HTSUS. The General Rules of Interpretation require that ordinarily a product is classified in the heading that most specifically describes it. *See* GRI 3(a) ("The heading which provides the most specific description shall be preferred to headings providing a more general description."). Therefore, once within Chapter 32 by operation of Rule 1(a), Ciba argues, the HTSUS General Rules of Interpretation required that the trial court determine whether the PERGASCRIPTS are "ink." If they are "ink," Ciba argues, the PERGASCRIPTS must be classified as such, rather than as the less specific "synthetic organic coloring matter." Ciba further argues that Note 3 to Chapter 32 is explicit in requiring that anything classifiable under Heading 3215 as "ink" cannot be classified under Head-

ing 3204 as "synthetic organic coloring matter." Finally, Ciba asserts that goods classified in Headings 3202 through 3214 (including 3204) are utilized in a manner other than writing or printing (*i.e.*, dyeing, staining, or painting). PERGASCRIPTS, Ciba argues, are used for writing and printing and are therefore more properly classified as an "ink" rather than as a dye, paint or varnish, all of which impart color in a manner different from printing. Thus, Ciba argues that by forcing materials specifically within various use provisions of Chapter 32 to be classified in a more general provision because of their chemical structure, Customs and the trial court have inverted the normal presumption of HTSUS classification.

■ Ciba is correct in noting that GRI 3 directs classification in the most specific heading. In addition, our case law consistently holds that where two or more headings are appropriate the more specific heading should be applied. *See, e.g., IKO Indus. Ltd. v. United States*, 105 F.3d 624, 628 (Fed.Cir.1997). Thus, we do not dispute that if PERGASCRIPTS were indeed classifiable in both Heading 3215 and Heading 3204 they should properly be classified in Heading 3215. It does not follow, however, that the explanatory notes and the headings must be interpreted to permit classification in the most specific category. Ciba's argument asks us to place the cart before the horse, requiring the court to hold that, because the rules require classification in the most specific category possible, the most specific category must be a possible category. The second requirement does not necessarily follow the first; before the specificity requirement of GRI 3 can be applied, it must be determined that a product is indeed classifiable in the more specific category. Such a determination requires us to examine language of the statute to discern whether PERGASCRIPTS could ever be classified in Heading 3215.

We do not agree with Ciba that the language of Note 1(a) is ambiguous. The

plain language of Note 1(a), read in conjunction with Note 2(f) of Chapter 29, can only be interpreted to mean that Headings 3203 and 3204 are the only acceptable classifications within Chapter 32 for a "separate chemically defined compound." We, like the Court of International Trade, find telling the failure of the chapter notes to mention Heading 3215 classification as a specific exception to the general rule that "separate chemically defined compounds" are not classifiable in Chapter 32. As the trial court noted, "[i]f Congress had wanted separate chemically defined organic coloring matter to be classifiable as 'inks' in Heading 3215, it presumably would have listed heading 3215, alongside headings 3203, 3204 and 3212 in Note 2 to Chapter 29." *Ciba–Geigy,* 44 F.Supp.2d at 212. Likewise, it would have listed Heading 3215 in Note 1(a) of Chapter 32.

The fact that the statute specifically enumerates exceptions to the general rule that separate chemically defined compounds are excluded from Chapter 32 and included in Chapter 29 indicates that Congress intended to create narrowly defined exceptions rather than broad ones. If Congress had intended only that coloring matter generally be excluded from Chapter 29 and included in Chapter 32, it could have simply stated in Note 2(f) that Chapter 29 does not include "tanning or dyeing extracts; tannins and their derivatives; dyes, pigments and other coloring matter; paints varnishes; putty and other mastics; [and] inks" (Chapter 32). Congress did not do so; instead Note 2(f) specifies individual headings of Chapter 32, the contents of which are excluded from classification under Chapter 29.

Second, Ciba argues, the failure to mention Heading 3215 among the other enumerated exceptions in Notes 1(a) and 2(f) does not indicate congressional intent to require that an ink be classified in 3204 if the ink also happens to be a separate chemically defined compound. In support of its position, Ciba cites the explanatory notes of the Harmonized Commodity Description and Coding System, upon which the HTSUS is based. Those explanatory

notes, Ciba points out, do not discuss color formers such as PERGASCRIPTS. Thus, it argues, the drafters of the Harmonized Commodity Description and Coding System must not have had color formers in mind when the chapter notes of the HTSUS were drafted. We find this argument unpersuasive.

■■■■ When confronted with unambiguous statutory language, we will not discount the statute's plain language by assuming ignorance on the part of Congress. Nor will we reject the plain language of the HTSUS because a product is new or was not considered by Congress at the time the HTSUS was drafted. If an evolution in technology or introduction of a new product means that the plain language of the HTSUS no longer reflects the intent of Congress, it is Congress's task to change the words of the statute. *Cf. United States v. Locke,* 471 U.S. 84, 95, 105 S.Ct. 1785, 85 L.Ed.2d 64 (1985) ("[T]he fact that Congress might have acted with greater clarity or foresight does not give courts a carte blanche to redraft statutes in an effort to achieve that which Congress is perceived to have failed to do."). The court cannot presume that Congress, confronted with PERGASCRIPTS, would alter the language of Note 1(a) to permit classification of "separate chemically defined compounds" as "ink" in Heading 3215.

## CONCLUSION

We do not find persuasive Ciba's assertion that the chapter notes merely allow the inclusion somewhere in Chapter 32 of those products that are *prima facie* classifiable in Heading 3204. On the contrary, we hold that the language of the notes explicitly permits separate chemically defined compounds to be classified under Chapter 32 *only* if such compounds are actually classified in one of the headings mentioned in that note, *e.g.,* 3204. Thus, the Court of International Trade did not err in refusing to reach the factual question of whether PERGASCRIPTS are ink

and correctly held on summary judgment that PERGASCRIPTS were properly classified in Heading 3204. Accordingly, we *AFFIRM.*