# United States Court of Appeals for the Federal Circuit

2006-7330

MARTHA M. MYORE,

Claimant-Appellant,

v.

R. JAMES NICHOLSON, Secretary of Veterans Affairs,

Respondent-Appellee.

Kenneth M. Carpenter, Carpenter, Chartered, of Topeka, Kansas, argued for claimant-appellant.

Meredyth D. Cohen, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee. With her on the brief were Peter D. Keisler, Assistant Attorney General, and Mark A. Melnick, Assistant Director. Of counsel were Bryant G. Snee, Assistant Director and David B. Stinson, Trial Attorney. Of counsel on the brief were David R. McLenachen, Deputy Assistant General Counsel, and Michelle Doses Bernstein, Attorney, United States Department of Veterans Affairs, of Washington, DC.

Appealed from: United States Court of Appeals for Veterans Claims

Judge Alan G. Lance, Sr.

# United States Court of Appeals for the Federal Circuit

2006-7330

MARTHA M. MYORE,

Claimant-Appellant,

v.

R. JAMES NICHOLSON, Secretary of Veterans Affairs,

Respondent-Appellee.

---

DECIDED:  June 6, 2007

---

Before NEWMAN, LOURIE, and SCHALL, Circuit Judges.

SCHALL, Circuit Judge.

Martha M. Myore, appeals the decision of the United States Court of Appeals for Veterans Claims ("Veterans Court") that sustained the decision of the Board of Veterans' Appeals ("Board") denying Ms. Myore's claim for dependency and indemnity compensation ("DIC").  Myore v. Nicholson, No. 04-2110 (Vet. App. Apr. 19, 2006). Because the Veterans Court did not err in its determination that a veteran's willful misconduct will prevent a finding of service connection and that DIC is only available where there is a service-connected death or compensable disability, we affirm.

BACKGROUND

I.

Ms. Myore is the widow of a Marine who died while on active duty. Sergeant Kenneth Myore served in the United States Marine Corps from May 1984 until his death while on active duty on May 26, 1990. Evidence indicated that Sgt. Myore died from a self-inflicted gunshot wound to the head while he was playing Russian roulette. See Myore, slip op. at 1 ("Following an evening of drinking with friends, the veteran placed a single round in a .38 caliber revolver, spun the cylinder, placed the gun to his head, pulled the trigger, spun the cylinder again, placed the gun to his head, and pulled the trigger shooting himself in the head. He died later the same day at a hospital." (record cites omitted)).

II.

Ms. Myore applied for DIC under 38 U.S.C. § 1310 based upon her husband's death while on active duty. DIC is a monthly payment made by the Secretary of Veterans Affairs ("Secretary") to the surviving spouse, child, or parent of a veteran because of a service-connected death. In June of 1991, the Department of Veterans Affairs (VA) Regional Office denied Ms. Myore's application, finding that Sgt. Myore's death was not service-connected because his death resulted from his own willful misconduct. Ms. Myore appealed to the Board.

Following a long procedural history that included multiple decisions by the Board and appeals to the Veterans Court, the Board denied Ms. Myore's DIC claim on

September 15, 2004.[1]  The Board determined that: (1) Sgt. Myore died as the result of a self-inflicted gunshot wound to the head while he was playing Russian roulette; (2) Sgt. Myore's death was not the result of suicide; (3) his death was not accidental; and (4) his death was either the proximate and immediate result of his intoxication or proximately caused by his deliberate or intentional wrongdoing with wanton and reckless disregard of its probable consequences.  The Board held that Sgt Myore's death was the result of his willful misconduct and that the willful misconduct barred Ms. Myore from receiving DIC benefits.  The Veterans Court affirmed the decision of the Board, stating that

> under 38 U.S.C. § 1310(a) DIC is available to a veteran's surviving spouse, children, and parents where the veteran's death results from a service-connected disability as defined under chapter 11 of that same title. Service connection under chapter 11 of title 38 will not be found where the disability is the result of the veteran's willful misconduct.  38 U.S.C. §§ 1110, 1131.

Myore, slip op. at 2 (quoting Myore v. Principi, 18 Vet. App. 1 (2001) (table)).  Ms. Myore timely appealed the decision of the Veterans Court.

---

[1]  In a December 1993 decision, the Board found that Sgt. Myore had died due to a self-inflicted wound to the head while playing Russian roulette and that he was not insane at the time of his death.  The Board therefore denied DIC, finding that the veteran's death was the result of his own willful misconduct and was not incurred in the line of duty.  Ms. Myore appealed to the Veterans Court.  On October 31, 1996, the Veterans Court remanded her appeal because the Board had failed to provide an adequate statement of reasons and bases for concluding that Sgt. Myore's death was the result of his own willful misconduct.

After further development of the record, on January 31, 2000, the Board again denied Ms. Myore's claim, finding that Sgt. Myore died as the result of a self-inflicted gunshot wound to the head while he was playing Russian roulette and that his death was not the result of suicide.  Ms. Myore appealed for a second time and the Veterans Court again vacated the Board's decision on July 9, 2001, expressing concern about whether the pertinent VA regulations provide for an objective standard or principled basis for distinguishing willful misconduct from suicide in a Russian roulette situation.  Ms. Myore then appealed to this court, but her appeal was dismissed in March 2003 because the remand order of the Veterans Court was not a final order.

Ms. Myore's claim thus returned once again to the Board, which reached the same result as before and again denied her claim on September 15, 2004.

DISCUSSION

I.

We have exclusive jurisdiction to "review and decide any challenge to the validity of any statute or regulation or any interpretation thereof" by the Veterans Court "and to interpret constitutional and statutory provisions, to the extent presented and necessary to a decision." 38 U.S.C. § 7292(c). As spelled out more fully below, the issue before us is whether the Veterans Court erred in construing 38 U.S.C. § 1310. Therefore, because we are faced with a challenge to the Veterans Court's interpretation of a statute, we have jurisdiction under 38 U.S.C. § 7292(c). "We review a statutory interpretation by the Court of Appeals for Veterans Claims de novo." Andrews v. Principi, 351 F.3d 1134, 1136 (Fed. Cir. 2003); Bustos v. West, 179 F.3d 1378, 1380 (Fed. Cir. 1999).

II.

Ms. Myore does not challenge the determination that Sgt. Myore's death was the result of his own willful misconduct.[2] Rather, she argues that the Veterans Court erred in its interpretation of § 1310, which reads:

---

[2]    Except to the extent that an appeal from the Veterans Court presents a constitutional issue, we may not review a challenge to a factual determination, or a challenge to a law or regulation as applied to the facts of a particular case. 38 U.S.C. § 7292(d)(2).

(a) When any veteran dies after December 31, 1956, from a service-connected or compensable disability, the Secretary shall pay dependency and indemnity compensation to such veteran's surviving spouse, children, and parents. The standards and criteria for determining whether or not a disability is service-connected shall be those applicable under chapter 11 of this title.

(b) Dependency and indemnity compensation shall not be paid to the surviving spouse, children, or parents of any veteran dying after December 31, 1956, unless such veteran (1) was discharged or released under conditions other than dishonorable from the period of active military, naval, or air service in which the disability causing such veteran's death was incurred or aggravated, or (2) died while in the active military, naval, or air service.

Ms. Myore claims that she is entitled to DIC because Sgt. Myore died while on active duty, and pursuant to subsection (b)(2), survivors of active duty service members are entitled to DIC regardless of the nature of the member's death. Ms. Myore argues that the Veterans Court erred when it applied subsection (a)'s requirement that a disability be service-connected as determined by chapter 11 as a bar to compensation under subsection (b)(2). Under Ms. Myore's interpretation of the statute, subsection (a) and subsection (b) are two alternative provisions authorizing a DIC award. According to Ms. Myore, subsection (b) authorizes DIC when a service member dies while on active duty and there is no reference to chapter 11 or willful misconduct limiting the authorization. Ms. Myore notes that no active duty service member can qualify for benefits under chapter 11 because that chapter is limited to compensation to the veteran for service-connected disabilities. Therefore, Ms. Myore contends, the reference to chapter 11 found in subsection (a), if applied with equal force to subsection (b)(2), would preclude a DIC award to the survivors of any service member who dies while on active duty, rendering subsection (b)(2) superfluous. This, Ms. Myore urges,

would be an unreasonable reading of the statute and contrary to the Congressional intent of providing survivors of active duty service members DIC.

The government responds that subsection (a) and subsection (b) are not two separate provisions setting forth alternative bases for DIC. Rather, the government argues, subsection (b) is a limitation on subsection (a)'s DIC authorization, meant to ensure that DIC is not paid upon the death of a person who served dishonorably. According to the government, this reading of the statute is clear both from the negative language used in subsection (b) and also from an analysis of title 38 as a whole. Thus, the government urges that the positive language in subsection (a) sets forth an entitlement to benefits, while the negative language in subsection (b) represents a limitation on that entitlement. The government explains that it is irrelevant that an active duty service member who dies on active duty would not be entitled to compensation under chapter 11 because § 1310 only refers to chapter 11 as setting forth the standard for determining service connection. The only portion of chapter 11 relevant to this appeal, according to the government, is the portion that says willful misconduct precludes a finding of service connection.

III.

"Statutory interpretation begins with the language of the statute, the plain meaning of which we derive from its text and its structure." McEntee v. Merit Sys. Prot. Bd., 404 F.3d 1320, 1328 (Fed. Cir. 2005). If the statutory language is clear and unambiguous, the inquiry ends with the plain meaning. Roberto v. Dep't of the Navy, 440 F.3d 1341, 1350 (Fed. Cir. 2006).

The Veterans Court correctly construed the relevant statute, 38 U.S.C. § 1310. A plain reading of the statute reveals that the two subsections are to be read together. Subsection (a) sets forth the basic entitlement to DIC by explicitly requiring the Secretary to pay DIC to specified individuals under certain circumstances. The threshold criterion for entitlement to DIC under subsection (a) is the death of a veteran due to a service-connected or compensable disability. Subsection (b) places a constraint on that entitlement: it ensures that only the survivors of veterans who did not serve dishonorably receive benefits. The determination of what constitutes honorable service is set forth in subsections (b)(1) and (b)(2) respectively—either the veteran was discharged under conditions other than dishonorable or the veteran died while still on active duty. The relationship of subsection (a) as an authorizing provision and subsection (b) as a limitation on that authorization is evidenced by the chosen language. The authorizing provision uses affirmative language to grant benefits ("the Secretary shall pay dependency and indemnity compensation"), while the limiting provision uses negative language ("[DIC] shall not be paid . . . unless"). Additionally, the structure of the statute does not indicate that the subsections are to be read as two separate bases for awarding benefits, which would be the case if the disjunctive "or" appeared in between the subsections. See, e.g., Van Wersch v. Dep't of Health & Human Servs., 197 F.3d 1144, 1151 (Fed. Cir. 1999) ("[I]n the English language, the word 'or' unambiguously signifies alternatives."). Therefore, it follows that the criteria from both subsections (a) and (b) must be met in order to qualify for benefits under § 1310.

Consideration of the statute in the overall context of title 38 reveals the Congressional intent that DIC be available only for service-connected deaths. 38 U.S.C. § 101(14)(A) defines the term dependency and indemnity compensation as "a monthly payment made by the Secretary to a surviving spouse, child, or parent . . . <u>because of a service-connected death</u> occurring after December 31, 1956." (emphasis added).[3] Additionally, the title of chapter 13 is "Dependency and Indemnity Compensation <u>for Service-Connected Deaths</u>" (emphasis added). Thus, the intent of Congress that the statutory grant of benefits under § 1310 be available only for service-connected deaths is clear.

Section 1310(a) requires that the standards and criteria for determining whether or not a disability is service-connected be those applicable under chapter 11 of title 38. Chapter 11 sets forth several bars to a finding of service connection, one of those bars being that an injury is not considered service-connected if it was a result of the person's own willful misconduct. <u>See, e.g.</u>, 38 U.S.C. § 1110 (awarding disability compensation for injury suffered or disease contracted in line of duty, but further providing that "no compensation shall be paid if the disability is the result of the veteran's own willful misconduct"); 38 U.S.C. § 1113 (providing that presumption of service connection contained in 38 U.S.C. §§ 1112, 1116, 1118 is rebutted by evidence establishing that a disability is due to the veteran's own willful misconduct). The Veterans Court properly determined that one of the steps for determining whether or not a disability is service-

---

[3] Similarly, 38 C.F.R. § 3.5(a) defines dependency and indemnity compensation as "a monthly payment made by the Department of Veterans Affairs to a surviving spouse, child, or parent: (1) <u>Because of a service-connected death</u> occurring after December 31, 1956." (emphasis added).

connected in chapter 11 is a determination of whether the disability is the result of the veteran's own willful misconduct and that a finding of willful misconduct precludes a finding of service connection for the purposes of DIC entitlement under § 1310.

There is no risk that this interpretation of the statute will deny all survivors of service members who die while on active duty DIC benefits. The term "veteran," as used in title 38 of the United States Code, is defined to mean "a person who served in the active military, naval, or air service, and who was discharged or released therefrom under conditions other than dishonorable." 38 U.S.C. § 101(2). The term "veteran," as it is used in chapter 13, "includes a person who died in the active military, naval, or air service." 38 U.S.C. § 1301. Under the statutory scheme, for a veteran's death to be considered service-connected it must result from a disability incurred in the line of duty. See 38 U.S.C. § 101(16).[4] For an active duty service member, there is a presumption that an injury incurred during active military, naval, or air service was incurred in the line of duty unless the injury was a result of the person's own willful misconduct. 38 U.S.C.

---

[4]  "The term 'service-connected' means, with respect to disability or death, that such disability was incurred or aggravated, or that the death resulted from a disability incurred or aggravated, in line of duty in the active military, naval, or air service." 38 U.S.C. § 101(16).

"The term 'non-service-connected' means, with respect to disability or death, that such disability was not incurred or aggravated, or that the death did not result from a disability incurred or aggravated, in line of duty in the active military, naval, or air service." 38 U.S.C. § 101(17).

§ 105(a).[5]  Therefore, 38 U.S.C. § 1310 authorizes DIC for the survivors of a service member who dies while on active duty if the death is not the result of the service member's own willful misconduct.  Because Sgt. Myore's death was the result of his own willful misconduct, Ms. Myore, his widow, is not entitled to DIC.

CONCLUSION

For the foregoing reasons, the decision of the Veterans Court affirming the Board's denial of Ms. Myore's DIC claim under § 1310 is affirmed.

AFFIRMED

---

[5]  38 U.S.C. § 105(a) reads:

An injury or disease incurred during active military, naval, or air service will be deemed to have been incurred in line of duty and not the result of the veteran's own misconduct when the person on whose account benefits are claimed was, at the time the injury was suffered or disease contracted, in active military, naval, or air service, whether on active duty or on authorized leave, unless such injury or disease was a result of the person's own willful misconduct or abuse of alcohol or drugs.