**UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS**

No. 05-3184

KEVIN J. ROSENBERG, APPELLANT,

V.

GORDON H. MANSFIELD,
ACTING SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued August 21, 2007                    Decided November 28, 2007    )

*Kevin J. Rosenberg*, pro se.

*Brian P. Tierny*, with whom *Paul J. Hutter*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Brian B. Rippel*, Deputy Assistant General Counsel; and *Ella Krainsky*, Appellate Attorney, were on the brief, all of Washington D.C., for the appellee.

Before GREENE, *Chief Judge*, and KASOLD and LANCE, *Judges*.

LANCE, *Judge*, filed the opinion of the Court. KASOLD, *Judge*, filed a concurring opinion.

LANCE, *Judge*: The appellant, Kevin J. Rosenberg, an attorney acting on his own behalf, appeals a July 15, 2005, decision of the Board of Veterans' Appeals (Board). Record (R.) at 1-10. In that decision, the Board denied his claim for basic educational assistance under 38 U.S.C. § 3011. For the reasons set forth below, the Board's July 2005 decision will be affirmed.

**I. BACKGROUND**

In August 1992, the appellant joined the University of Arizona's Naval Reserve Officer Training Corps (NROTC) as a College Program Basic student. R. at 40. In July 1993, the Secretary of the U.S. Navy, acting pursuant to his authority under 10 U.S.C. § 2107, selected the appellant for an NROTC scholarship. R. at 17, 33. The following month, the appellant signed an NROTC Scholarship Service Agreement, the terms of which officially recognized his appointment as a

section 2107 midshipman and his entitlement to three years of financial assistance. R. at 17-20. That assistance totaled $3,675 in 1993, $7,350 in 1994, and $3,989 in 1995. R. at 21.

In December 1996, after successfully completing the NROTC program, the appellant was commissioned as an ensign in the U.S. Navy. That same month, he also signed a DD Form 2366, a statement of understanding with respect to his "eligibility to participate in the Veterans' Educational Assistance Act of 1984 (New GI Bill)," wherein the appellant acknowledged that he was an "ROTC scholarship graduate" and hence "NOT ELIGIBLE" for basic educational assistance under Chapter 30, title 38, U.S. Code. R. at 23. He served honorably in the U.S. Navy from December 1996 until December 2000. R. at 4, 14-15.

In April 2001, the appellant applied for basic educational assistance under 38 U.S.C. § 3011 for the cost of attending law school. R. at 25-27. VA denied that claim, and the appellant appealed. R. at 29. In August 2001, while his appeal was still pending, the appellant enrolled as a full-time student at the Yeshiva University, Benjamin Cardozo School of Law in New York, New York. In January 2002, VA reversed its original decision and issued the appellant a "Certificate of Eligibility" for 36 months of Chapter 30 educational benefits. R. at 55.

In February 2003, the U.S. Navy recalled the appellant to active duty. R. 69-75. This change in military status prompted VA to discontinue his Chapter 30 educational benefits. R. at 5. In June 2003, one month after his release from active duty, VA received the appellant's request for reinstitution of his Chapter 30 educational benefits. R. at 61-62. In October 2003, the RO notified the appellant that those benefits had been terminated, effective August 27, 2001, because he had received more than $3,400 in financial assistance annually during his participation in the section 2107 NROTC scholarship program. R. at 89-90. While his appeal of that decision was pending, the Secretary waived the $11,109.33 debt the appellant had accrued as a result of the overpayment in Chapter 30 educational benefits he received during his first four semesters of law school. R. at 142-43. The Secretary also granted $3,643.83 in additional equitable relief, an amount equal to the Chapter 30 educational benefits that the appellant, if eligible, would have received during the Fall 2003 semester. R. at 151.

In July 2005, the Board issued the decision here on appeal. The Board found that the appellant was not entitled to Chapter 30 educational benefits because he had received more than $3,400 in financial assistance annually during his participation in the section 2107 NROTC

2

scholarship program.  R. at 7-9.  The Board further found that it had no legal authority to grant an equitable award of Chapter 30 educational benefits.  R. at 9 (citing *Harvey v. Brown*, 6 Vet.App. 416, 425 (1994)).

## II.  ANALYSIS

The appellant argues that the Secretary's interpretation of 38 U.S.C. § 3011 is incorrect and that, even if his interpretation is correct, equitable estoppel bars the termination of his Chapter 30 educational benefits.  Appellant's Brief (Br.) at 5-9.  The Secretary responds that the plain meaning of 38 U.S.C. § 3011 bars the appellant from receiving basic educational assistance and that there is no merit, therefore, to his equitable estoppel argument.  Secretary's Br. at 6-11.

### A.  38 U.S.C. § 3011(c)(3) and 10 U.S.C. § 2107

Section 3011 of title 38, U.S. Code, is the entitlement provision for basic educational assistance.  *See* 38 C.F.R. § 21.7040 (2007); *see also Burton v. Nicholson*, 19 Vet.App. 249, 251 (2005) (discussing the history of veterans educational assistance).  Subsection (c)(3) of section 3011 sets forth the eligibility requirements for veterans who have received financial assistance pursuant to 10 U.S.C. § 2107.[1]  It states:

> (3) An individual who after December 31, 1976, receives a commission as an officer in the Armed Forces upon completion of a program of educational assistance under section 2107 of title 10 is not eligible for educational assistance under this section if the individual enters on active duty-
> > (A) before October 1, 1996; or
> > (B) after September 30, 1996, and while participating in such program received more than $3,400 for each year of such participation.

38 U.S.C. § 3011(c)(3).  The appellant completed a section 2107 program of educational assistance, was commissioned as an ensign in the U.S. Navy and entered active duty after September 30, 1996, and received more than $3,400 during each of his three years as a section 2107 midshipman.  The issue here is whether the appellant is eligible for Chapter 30 educational benefits because he did not

---

[1]Section 2107 of title 10, U.S. Code, establishes a "[f]inancial assistance program for specially selected members."  It provides that the Secretary of the military department concerned may, subject to certain age restrictions, specially select a citizen or national of the United States for appointment as a cadet or midshipman in the reserve component of the armed forces under his jurisdiction.  10 U.S.C. § 2107(a)-(b).  Once the statutorily-required contract is executed, an appointee then becomes eligible to receive financial assistance for "tuition, fees, books, and laboratory expenses," or, in certain circumstances, for room and board.  10 U.S.C. § 2107(c)(1), (c)(3).

3

receive any section 2107 financial assistance while participating in the NROTC College Program during the 1992-1993 school year (SY).

"'Statutory interpretation begins with the language of the statute, the plain meaning of which we derive from its text and its structure.'" *Myore v. Nicholson,* 489 F.3d 1207, 1211 (Fed. Cir. 2007) (quoting *McEntee v. Merit Sys. Prot. Bd.*, 404 F.3d 1320, 1328 (Fed. Cir. 2005)). Section 3011 states that section 2107 program participants who entered active duty after September 30, 1996, and who received more than $3,400 per year "*while participating in such program*" are not eligible for basic educational assistance. *See* 38 U.S.C. § 3011(c)(3)(B) (emphasis added). The appellant argues that he received no financial assistance "while **participating** in an ROTC program" during the 1992-1993 SY; therefore, he qualifies for the eligibility exception. Br. at 5. He further argues that the statute intends to provide educational benefits to NROTC members, himself included, who "did not receive a full, four year scholarship," and that Congress's decision to increase the maximum allowable amount of ROTC educational assistance from $2,000 to $3,400 in the Veterans Education and Benefits Expansion Act (VEBEA) of 2001, Pub. L. 107-103, § 105, 115 Stat. 983 (codified in part at 38 U.S.C. §§ 3011, 3012), supports these contentions. Br. at 6-7.

Contrary to the appellant's assertions, the text and structure of the statute make clear that the clause "while participating in such program" refers only to the section 2107 program of educational assistance. *See Gardner v. Derwinski,* 1 Vet.App. 584, 586 (1991) ("Determining a statute's plain meaning requires examining the specific language at issue and the overall structure of the statute."), *aff'd sub nom. Gardner v. Brown,* 5 F.3d 1456 (Fed. Cir. 1993), *aff'd* 513 U.S. 115 (1994); *Johnson v. Brown,* 9 Vet.App. 369, 371 (1996) (When "'the plain meaning of a statute is discernible, that "plain meaning must be given effect."'" (quoting *Tallman v. Brown,* 7 Vet.App. 453, 460 (1995))); *Smith v. Derwinski,* 2 Vet.App. 429, 431 (1992) (If "a reviewing court 'find[s] the terms of a statute unambiguous, judicial inquiry is complete except in rare and exceptional circumstances.'" (quoting *Demarest v. Manspeaker*, 498 U.S. 184 (1991))). The record shows that the appellant was not "specially selected" for section 2107's financial assistance program until July 1993, and that he did not sign the NROTC Scholarship Service Agreement officially recognizing his appointment as a section 2107 midshipman until August 1993. Thus, his participation in the NROTC as a College Program Basic student during the 1992-1993 SY is simply not relevant to his eligibility for basic

4

educational assistance under the statute.[2] The appellant has not identified anything in the legislative history that would support a contrary interpretation, *see Transco Prods. Inc. v. Performance Contracting, Inc.*, 38 F.3d 551, 556 (Fed. Cir. 1994) ("When statutory interpretation is at issue, the plain and unambiguous meaning of a statute prevails in the absence of clearly expressed legislative intent to the contrary."), and he has not demonstrated that our application of the same would produce an absurd result. *See Gardner*, 1 Vet.App. at 587 (noting the limited "'absurd result' exception to the plain meaning rule"). Therefore, we must reject the interpretation urged by the appellant on appeal. *See Babbitt v. Oglala Sioux Tribal Public Safety Dep't,* 194 F.3d 1374, 1378 (Fed. Cir. 1999) (stating that "we must assume that Congress 'says in a statute what it means and means in a statute what it says there'" (quoting *Conn. Nat'l Bank v. Germain,* 503 U.S. 249, 254 (1992))); *Tropf v. Nicholson,* 20 Vet.App. 317, 321 n.1 (2006) ("[A] functioning system of laws must give primacy to the plain language of authorities . . . Without standard word meanings and rules of construction, neither Congress nor the Secretary can know how to write authorities in a way that conveys their intent and no practitioner or–more importantly–veteran can rely on a statute or regulation to mean what it appears to say.").

## B. Equitable Estoppel

The appellant argues that equitable estoppel bars the termination of his educational benefits, because he detrimentally relied on VA's erroneously-issued January 2002 Certificate of Eligibility. The Supreme Court has held that the Appropriations Clause of the Constitution, U.S. CONST. art. I, § 9, cl. 7, precludes the judiciary from ordering an award of public funds to a statutorily ineligible claimant on the basis of equitable estoppel. *See OPM v. Richmond*, 496 U.S. 414, 430 (1990); *see also Utah Power & Light Co. v. United States*, 243 U.S. 389, 408-09 (1917) (holding that "the

---

[2] A section 2107 participant's eligibility for Chapter 30 educational benefits depends on the amount of financial assistance he or she receives during each scholarship year, not on the total amount of financial assistance received or the absence of such assistance during a non-scholarship period. We acknowledge that this interpretation of the statute may produce unfair results. For instance, a 4-year section 2107 recipient is eligible for additional Chapter 30 educational benefits if, during any one of those 4 years, he or she received $3,400 or less in financial assistance. However, a 2-year section 2107 scholarship recipient is not eligible for such benefits if, during both of those 2 years, he or she received $3,401 in financial assistance. That being said, it is the responsibility of Congress, not the Court, to address any unfairness in the statute as written. *See Ciba-Geigy Corp v. United States,* 223 F.3d 1367, 1373 (Fed. Cir. 2000) ("It is Congress's task to change the words of the statute."); *see also United States v. Missouri Pac. R.R. Co.,* 278 U.S. 269, 277-78 (1929) ("Inconvenience or hardships, if any, that result from following the statute as written, must be relieved by legislation.").

United States is neither bound nor estopped by acts of its officers or agents in entering into an arrangement or agreement to do or cause to be done what the law does not sanction or permit"). That precedent is controlling here. Accordingly, our determination that the appellant is not eligible to receive basic educational assistance precludes an award thereof on the basis of equitable estoppel. *See OPM,* 496 U.S. at 434. ("[I]t is enough to say that this Court has never upheld an assertion of estoppel against the Government by a claimant seeking public funds.").

### III. CONCLUSION

After consideration of the appellant's and the Secretary's briefs, and a review of the record, the Board's July 15, 2005, decision is AFFIRMED.


KASOLD, *Judge*, concurring: I write separately to address what is a much too narrow view by the Secretary of our jurisdiction. Specifically, the Secretary argues that the Court lacks jurisdiction to even review Mr. Rosenberg's claim for equitable estoppel, ostensibly because we do not sit as a court of equity. *See* Secretary's Brief (Br.) at 9.[1]

Although we are not a court of equity in the sense that we cannot render an award that is contrary to law, this is true of all federal courts,[2] *see Immigration & Naturalization Serv. v. Pangilinan,* 486 U.S. 875, 883 (1988) ("[I]t is well established that 'courts of equity can no more disregard statutory and constitutional requirements and provisions than can courts of law.'"(quoting *Hedges v. Dixon County,* 150 U.S. 182, 192 (1893))); *see also OPM v. Richmond*, 496 U.S. 414, 434 (1990) ("[I]t is enough to say that this Court has never upheld an assertion of estoppel against the Government by a claimant seeking public funds.").

Further, although we generally do not have jurisdiction to review the Secretary's exercise of his equitable authority under 38 U.S.C. § 503, *see Harvey v. Brown,* 6 Vet.App. 416, 425 (1994) (recognizing that neither the Board nor the Court has jurisdiction to review the Secretary's exercise

---

[1] Indeed, although *OPM v. Richmond*, 496 U.S. 414, 434 (1990) is controlling in this case, the Secretary fails to cite to it in his written brief, relying instead on the assertion that we lack jurisdiction to hear the issue.

[2] "There is no procedural distinction in federal court between suits in equity and suits at law." 27A AM.JUR. 2D *Equity* § 4 (1996). *See* generally, the Fed. R. Civ. P. 1 (stating that these rules govern suits at law, equity, and in admiralty); FED. R. CIV. P. 2 (noting in federal courts there is one form of action called a "civil action").

of his equitable discretion),[3] it does not follow that we lack the authority to review the arguments made in this case, or any other arguments seeking equitable relief due to error on the part of the Secretary. Indeed, as with any federal court, we have all the authority necessary to exercise equitable jurisdiction and direct equitable relief not otherwise restricted by law. *Cf. Pangilinan*, *supra.*

For example, early on the Court recognized its authority to review and consider the application of equitable defenses. *See Manio v. Derwinski*, 1 Vet.App. 140, 143 (1991) (explicitly stating our authority to consider application of equitable defenses, but rejecting the Secretary's equitable defense of laches because this defense was not raised to the Board); *see also Browder v. Derwinski*, 1 Vet.App. 204, 208 (1991) (concluding "that the VA benefits system as well as the Veterans' Judicial Review Act both militate against the application of the doctrine [of laches] to cases before this Court"). We also have the authority to issue decisions nunc pro tunc when equity warrants such action, *see Padgett v. Nicholson,* 473 F.3d 1364, 1371 (Fed. Cir. 2007) (stating that "nunc pro tunc relief is equitable in nature"); *Seals v. Derwinski,* 2 Vet.App. 190, 191 (1992) (granting nunc pro tunc relief for a Notice of Appeal (NOA) timely filed via facsimile but without a confirming NOA as required by the Court's Rules of Practice and Procedure), and we have the equitable authority of "all courts established by an Act of Congress" granted by the All Writs Act. *See* 28 U.S.C. § 1651(a); *see Cox v. West,* 149 F.3d 1360, 1363 (Fed. Cir. 1998); *see also Rosemount, Inc. v. U.S. Int'l Trade Comm'n,* 910 F.2d 819, 821 (Fed. Cir. 1990) (stating that an injunction is equitable relief); *Ben-Shalom v. Secretary of the Army,* 807 F.2d 982, 988 (Fed. Cir. 1986) (holding writ of mandamus is equitable relief).

Moreover, in furtherance of our broad authority over Board decisions and matters below affecting Board decisions,[4] the Court has applied equitable estoppel against the Secretary precluding

---

[3] Not yet addressed is our authority to review allegations that the Secretary's actions under 38 U.S.C. § 503 violate the Constitution, e.g., discrimination violating the equal protection guaranteed by the Constitution. *See* 38 U.S.C. § 7261(1) (directing the Court to decide all relevant questions of, inter alia, constitutional interpretation, when necessary and presented).

[4] *See* 38 U.S.C. § 7252 (granting "exclusive jurisdiction to review decisions of the Board of Veterans' Appeals . . . [and the] "power to affirm, modify, or reverse a decision of the Board or to remand the matter, as appropriate"). *See also* 38 U.S.C. § 7261(a)(3)(A) (providing the full scope of our review authority, including, inter alia, the authority to compel action of the Secretary "unreasonably delayed" and set aside decisions, rules, or regulations of the Secretary or the Board that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law").

him from asserting that a claimant's informal claim is not a "cognizable claim for effective date purposes." *Servello v. Derwinski*, 3 Vet.App. 196, 200 (1992) (finding no evidence that the Secretary fulfilled his statutory duty pursuant to 38 C.F.R. § 3.155(a) to provide the veteran with an application form after receipt of an informal claim, the Court held that the Secretary "may not . . . assert . . . that . . . [the] informal claim is not a cognizable claim for effective-date purposes" (quoting *Quarles v. Derwinski*, 3 Vet.App. 129, 137 (1992))). We have also held that fair process requires certain notifications. *See Thurber v. Brown,* 5 Vet.App. 119, 123 (1993) ("The entire thrust of the VA's nonadversarial claims system is predicated upon a structure which provides for notice and an opportunity to be heard at virtually every step in the process."). Remedial actions such as these are not mandated by statute or regulation; they are equitable resolutions imposed by the Court.

Thus, Mr. Rosenberg's equitable estoppel argument fails not because the Court lacks jurisdiction to review such an argument. Rather, assuming arguendo that equitable estoppel was otherwise appropriate in this case, and it is not clear it would be,[5] Mr. Rosenberg's argument fails because a monetary award simply is not permitted by law. *See OPM,* 496 U.S. at 430 ("The whole history and practice with respect to claims against the United States reveals the impossibility of an estoppel claim for money in violation of a statute.").

---

[5] "[A] party seeking to assert equitable estoppel must demonstrate that (1) the party to be estopped made a 'definite misrepresentation of fact to another person having reason to believe that the other [would] rely upon it'; (2) the party seeking estoppel relied on the misrepresentations to its detriment; and (3) the 'reliance [was] reasonable in that the party claiming the estoppel did not know nor should it have known that its adversary's conduct was misleading.'" *Ramirez-Carlo v. United States,* 496 F.3d 41, 49 (1st Cir. 2007) (quoting *Heckler v. Community Health Services,* 467 U.S. 51, 59 (1984)).