# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 09-0728

GEORGE W. BRENISER, APPELLANT,

v.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued June 14, 2011                                    Decided September 19, 2011)

*Michael P. Horan*, with whom *Linda E. Blauhut* and *Jennifer A. Zajac* were on the brief, all of Washington, D.C., for the appellant.

*Leslie C. Rogall* and *Michael A. Carr*, with whom *Will A. Gunn*, General Counsel; and *R. Randall Campbell*, Assistant General Counsel, were on the brief, all of Washington, D.C., for the appellee.

Before KASOLD, *Chief Judge,* and LANCE and SCHOELEN, *Judges*.

SCHOELEN, *Judge*, filed the opinion of the Court. KASOLD, *Chief Judge*, filed an opinion concurring in part and dissenting in part.

SCHOELEN, *Judge*: The appellant, George W. Breniser, appeals through counsel a February 5, 2009, Board of Veterans' Appeals (Board or BVA) decision in which the Board denied his claim for entitlement to a higher rate of special monthly compensation (SMC) on account of being in need of the aid and attendance of another person or on account of being housebound.[1] Record of Proceedings (R.) at 3-12. Panel consideration is required to determine whether a veteran who is receiving SMC for the loss of use of both feet under 38 U.S.C. § 1114(l) is entitled to a higher rate

---

[1] The appellant does not raise any argument on appeal concerning the denial of SMC on account of being housebound; therefore, the Court will consider the matter to have been abandoned on appeal. *See Ford v. Gober*, 10 Vet.App. 531, 535 (1997) (holding claims not argued on appeal are deemed abandoned); *Bucklinger v. Brown*, 5 Vet.App. 435 (1993).

of SMC under 38 U.S.C. §§ 1114(o), (p), or (r) based on his need for aid and attendance, when such need arises out of the loss of use of both feet. This appeal is timely, and the Court has jurisdiction to review the Board's decision pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). Because section 1114(o) prohibits a "condition from being considered twice" in subsections (l) through (n) when determining whether a veteran is entitled to a higher rate of SMC under subsection (o), and the Court defers to the Secretary's reasonable interpretation of subsection (o) as requiring determinations to be based upon separate and distinct disabilities, the Court concludes that a claimant cannot establish entitlement to a higher rate of SMC under section 1114(o) – unless the claimant's need for aid and attendance arises from a disability *other* than that for which the claimant is already in receipt of SMC. Hence, the Court must affirm that part of the Board's decision that concluded that the appellant did not meet the requirements for a higher rate of SMC on account of the loss of use of both feet *and* being in need of the aid or attendance of another person as a result of the loss of use of both feet. 38 U.S.C. § 1114(l) and (o). However, because the Court concludes that the Board erred by failing to consider whether the appellant is entitled to a higher rate of SMC pursuant to 38 U.S.C. § 1114(p), the Court will remand the matter for further proceedings consistent with this decision.

## I. BACKGROUND

The appellant served on active duty in the U.S. Army from January 1949 to June 1952. R. at 766. He was receiving compensation for amputation of his left middle finger; a shrapnel wound scar on his chin and a biopsy scar for right gastrocnemius; cold injury to both feet, with plantar fasciitis and Raynaud's phenomenon, evaluated as 30% disabling, from April 1998 to May 2007; and his cold injury for both feet was changed to loss of use of both feet as residuals of cold injury, evaluated as 100% disabling, effective May 2007. R. at 72-73, 194-95, 546-47, 775. In 2003, he was granted a total disability rating based on individual unemployability effective October 15, 2001. R. at 377-81. In July 2008, the regional office (RO) granted entitlement to SMC based on loss of use of both feet pursuant to 38 U.S.C. § 1114(l), effective May 14, 2007, as well as entitlement to automobile and adaptive equipment and specially adapted housing. R. at 68-74.

2

In its February 5, 2009, decision here on appeal, the Board denied the appellant's claim for entitlement to a higher rate of SMC based on the need for aid and attendance or on account of being housebound. R. at 3-12. The Board noted the appellant's argument that "his bilateral leg disabilities, along with . . . nonservice-connected residuals of a stroke and decreased vision have rendered him wheelchair bound and requir[e]" aid and assistance of another person such that he is entitled to a higher rate of compensation. R. at 6. The Board noted that "as the veteran is already in receipt of [SMC under 38 U.S.C. § 1114(l)], what he seeks by this appeal is an additional, higher rate of [SMC] under 38 U.S.C. § 1114(o)." R. at 7. The Board stated that the higher rate of SMC under section 1114(o) "is payable for, among other things, conditions entitling a veteran to two or more of the rates (no condition being considered twice) provided in 38 U.S.C.A. § 1114(l) through (n). Determinations for entitlement under 38 U.S.C.A. § 1114(o) must be based upon *separate and distinct disabilities*." R. at 8. Thus, although the evidence showed that the appellant was wheelchair bound and required the assistance of another, because SMC was already in effect for the loss of use of both feet under section 1114(l), the Board stated that the question is whether the need for aid and attendance "is based upon a service-connected disability other than the bilateral disability of the feet." R. at 8-9. The Board discussed the appellant's service-connected amputated finger and residual scar, and found that the evidence did not demonstrate that these disabilities rendered him "so incapacitated that he requires care or assistance." R. at 9-10. The Board also discussed the appellant's non-service-connected conditions and stated that "[w]hile it is likely that these conditions combine to result in the veteran's need for aid and attendance, because they are not service-connected disabilities[,] the assignment of [SMC] is not warranted." R. at 10. The Board concluded that "although the veteran technically requires aid and attendance, it is not required for a [service-connected] disability that is separate and distinct from the loss of use of the feet and the veteran is therefore barred from receiving additional benefits." *Id*. Finally, the Board found that since the compensation under section 1114(l) was greater than the rate for SMC based on housebound status under section 1114(s), the claim under section 1114(s) was moot. R. at 11.

The pro se appellant appealed to this Court on February 28, 2009, and filed an informal brief in July 2009. After the case was assigned to a panel, the appellant obtained counsel, withdrew his informal brief, and substituted a formal brief.

On January 26, 2011, the appellant informed the Court that on January 7, 2011, VA notified him that he had been awarded a 60% disability rating for service-connected hearing loss, a 10% disability rating for tinnitus, and a higher level of SMC based on the 60% rating, effective March 29, 2010. The Court subsequently ordered the appellant to clarify his arguments and identify the subsection of 38 U.S.C. § 1114 under which was he granted a higher rate of SMC.

On February 8, 2011, the appellant responded that he had been awarded a half-step increased rate of SMC under 38 U.S.C. § 1114(p) and 38 C.F.R. § 3.350(f)(3) (2010), and asserted that this award did not moot his appeal to the Court. In a February 23, 2011, response, the Secretary agreed that the award of increased SMC under subsection (p) did not moot the appellant's arguments. The Secretary noted, however, that if the appellant disagrees with the level of SMC assigned in the January 7, 2011, decision, his remedy would be to file a Notice of Disagreement with the January 7, 2011, decision.

## II. THE PARTIES' CONTENTIONS

### A. The Appellant's Arguments

The appellant asks the Court to reverse the Board's decision because he asserts that he is entitled to a higher rate of SMC under the plain and unambiguous language of 38 U.S.C. § 1114. Appellant's Substitute Brief (Br.) at 8-21. The appellant argues, pursuant to section 1114(o), that he is entitled to the maximum rate of SMC because he satisfies the criteria for two rates under section 1114 (l). *Id*. at 20-21. The appellant contends that his first entitling "condition" is the loss of use of both feet and that his second entitling "condition" is that "his service-connected loss of use of both feet[] make him so helpless that he requires the regular aid and attendance of another person." *Id.* at 19. Because he is entitled to two rates of SMC under section 1114(l), he argues that he is thus entitled to the higher rate of SMC under section 1114(o) and the even higher rate under 1114(r)(1). *Id*. at 20-21. The appellant also argues that the Secretary's implementing regulation, 38 C.F.R. § 3.350(e)(3) (2011), is legally invalid because it ignores the plain language of section 1114(o) by treating the terms "disability," "condition," and "conditions" synonymously. *Id*. at 9-10, 13-16.

4

In the alternative, he argues that remand is warranted because the Board failed to consider whether his non-service-connected stroke, which the Board recognized as a condition affecting his need for aid and attendance, is aggravated by his service-connected cold injury and should constitute a second entitling condition under section 1114(o). *Id.* at 22-26 (citing *Allen v. Brown*, 7 Vet.App. 439 (1995) (en banc)). He states that remand is warranted to enable the Board to "determine whether [his] service-connected loss of use of his feet aggravates his non-service-connected disabilities and whether this aggravation qualifies him for an additional [SMC] award under [38 U.S.C.] § 1114(l), (o), (r)(1)[,] and [38 C.F.R.] § 3.352(a)." *Id.* at 26.

His second argument for remand is that the Board failed to consider whether he is entitled to a higher rate under subsection (p), which allows for an intermediate or full higher rate where a "veteran's service-connected disabilities exceed the requirements for any of the rates prescribed in . . . section [1114]." 38 U.S.C. § 1114(p); *see* Appellant's Br. at 27-28. As noted above, the appellant asserts that the January 2011 award of a higher rate of SMC under section 1114(p), effective from March 2010, does not moot his argument because he asserts that, on remand, the Board could determine that he is entitled to a full-step higher rate of SMC.

## B. The Secretary's Arguments

In a substitute brief, the Secretary argues that the regulations are consistent with both the plain language of the statute, as well as with congressional intent. Secretary's Br. at 6-18. The Secretary asserts that 38 C.F.R. § 3.350(e)(3) correctly interprets 38 U.S.C. § 1114(o), and that both the regulation and the statute clearly preclude awards for the maximum rate of SMC under subsection (o) based on the same disability. *Id.* at 9. The Secretary argues that "[i]n the context of [section 1114(o)] and its history, the word 'conditions' clearly refers to a term such as 'circumstances,' and the latter use of the word 'condition,' in its singular form, refers to the underlying *disability or disabilities*, such as anatomical loss, loss of use, or blindness, that entitles a [v]eteran to a rate proscribed in paragraph (l) to (n) of 38 U.S.C. § 1114." *Id.* at 15 (emphasis in original). The Secretary maintains that "the statute, since its inception, awarded the higher (o) rate to an individual who had loss or loss of use of the lower extremities and, in addition, helplessness due to some other service-connected disability or disabilities." *Id.* at 10. Because the appellant's need for aid and attendance arises out of the loss of use of his feet, the Secretary argues that he is not entitled to a

higher rate of SMC under section 1114(o). *Id*. at 18. At oral argument, the Secretary conceded that *if* the appellant is entitled to a higher rate of SMC under section 1114(o), then he would also be entitled to an additional allowance under subsection (r)(1) based on his need for regular aid and attendance.

With respect to the appellant's arguments for remand, the Secretary asserts that the appellant has not previously raised a claim for service connection on a secondary basis and has not pointed to evidence in the record of any such claim. *Id*. at 18-22. The Secretary argues that the record merely establishes that the appellant suffered a stroke, which rendered him unable to propel his wheelchair. *Id*. at 21. The Secretary contends that the appellant has not demonstrated error in the Board's decision because the appellant has not previously asserted a belief that his non-service-connected stroke is related to the cold weather residuals that caused the loss of use of his feet and the Board is "not 'require[d] to conduct an exercise in prognostication.'" *Id*. (quoting *Talbert v. Brown*, 7 Vet.App. 352, 356 (1995)). Finally, the Secretary refutes the appellant's assertion that subsection (p) was potentially applicable to the appellant's claim at the time of the Board's decision. *Id*. at 22. The Secretary relies on VA's regulation 38 C.F.R. § 3.350(f) (2010), which delineates numerous instances in which the Secretary is authorized to pay SMC at the next higher rate or at an intermediate rate. *Id.* Because loss of use of both feet, along with the need for regular aid and attendance, is not one of the enumerated circumstances listed in § 3.350(f), the Secretary asserts that section 1114(p) is not applicable. *Id.*

## III. LAW
### A. 38 U.S.C. § 1114

SMC is available when, "as the result of service-connected disability," a veteran suffers additional hardships above and beyond those contemplated by VA's schedule for rating disabilities. *See* 38 U.S.C. § 1114(k)-(s). The rate of SMC "varies according to the nature of the veteran's service-connected disabilities." *Moreira v. Principi*, 3 Vet.App. 522, 524 (1992). The Board's determination as to whether a veteran is entitled to SMC is a finding of fact that this Court reviews under the "clearly erroneous" standard of review. *See Prejean v. West*, 13 Vet.App. 444, 447 (2000); *Turco v. Brown*, 9 Vet.App. 222, 224 (1996).

6

Basic levels of SMC are listed in section 1114(k). Higher levels of SMC are provided in sections 1114(l), (m), (n), and (o), which state, in pertinent part:

(l) if the veteran, as the result of service-connected disability, has suffered the anatomical loss or loss of use of both feet, or of one hand and one foot, or is blind in both eyes, with 5/200 visual acuity or less, or is permanently bedridden or with such significant disabilities as to be in need of regular aid and attendance, the monthly compensation shall be $3,075;

(m) if the veteran, as the result of service-connected disability, has suffered the anatomical loss or loss of use of both hands, or of both legs at a level, or with complications, preventing natural knee action with prosthesis in place, or of one arm and one leg . . . , or has suffered blindness in both eyes having only light perception, or has suffered blindness in both eyes, rendering such veteran so significantly disabled as to be in need of regular aid and attendance, the monthly compensation shall be $3,392;

(n) if the veteran, as the result of service-connected disability, has suffered the anatomical loss or loss of use of both arms at levels, or with complications, preventing natural elbow action with prosthesis in place, has suffered the anatomical loss of both legs so near the hip as to prevent the use of prosthetic appliances, or has suffered the anatomical loss of one arm and one leg . . . , or has suffered anatomical loss of both eyes, or has suffered blindness without light perception in both eyes, the monthly compensation shall be $3,860;

(o) if the veteran, as the result of service-connected disability, has suffered disability under conditions which would entitle such veteran to two or more of the rates provided in one or more subsections (l) through (n) of this section, no condition being considered twice in the determination, . . . the monthly compensation shall be $4,313.

38 U.S.C. § 1114(l)-(o). Thus, subsections (l) through (n) provide progressively increased rates of SMC based on the severity of the veteran's disability. Subsection (o) provides for an even higher rate of SMC for veterans who are entitled to two or more of the rates provided under one or more subsections (l) through (n).

Subsection (p) provides for half- or full-step increases to the next higher rate in subsections (l) through (n) for a veteran whose condition exceeds the requirements of his current rate, but does not qualify for the next higher rate. 38 U.S.C. § 1114(p). Finally, if a veteran is entitled to compensation authorized under subsection (o), *and* is in need of regular aid and attendance, then in

7

addition to compensation available under subsection (o), he is entitled to receive an *additional* "aid and attendance allowance" under section 1114(r)(1) and (2).

### B. 38 C.F.R. §§ 3.350, 3.352 (2011)

VA has promulgated regulations implementing section 1114. 38 C.F.R. §§ 3.350, 3.352 (2011). As relevant to this appeal, the regulation implementing section 1114(o) provides that SMC under the (o) rate is payable for "[c]onditions entitling to two or more of the rates (no condition being considered twice) provided in 38 U.S.C. § 1114(l) through (n)." 38 C.F.R. § 3.350(e)(1)(ii). The appellant challenges § 3.350(e)(3), which provides the Secretary's interpretation of subsection (o)'s proviso "no condition being considered twice in the determination," and states:

> *Combinations*. Determinations must be based upon separate and distinct disabilities. This requires, for example, that where a veteran who had suffered the loss or loss of use of two extremities is being considered for the maximum rate on account of helplessness requiring regular aid and attendance, the latter must be based on need resulting from pathology other than that of the extremities. If the loss or loss of use of two extremities or being permanently bedridden leaves the person helpless, increase is not in order on account of this helplessness. Under no circumstances will the combination of "being permanently bedridden" and "being so helpless as to require regular aid and attendance" without separate and distinct anatomical loss, or loss of use, of two extremities, or blindness, be taken as entitling to the maximum benefit. The fact, however, that two separate and distinct entitling disabilities, such as anatomical loss, or loss of use of both hands and both feet, result from a common etiological agent, for example, one injury or rheumatoid arthritis, will not preclude maximum entitlement.

38 C.F.R. § 3.350(e)(3).

The criteria relevant to the determination of whether a veteran "is so helpless as to be in need of regular aid and attendance are contained in § 3.352(a)." 38 C.F.R. § 3.350(b)(3). Section 3.352(a) states:

> The following will be accorded consideration in determining the need for regular aid and attendance . . . : inability of claimant to dress or undress himself (herself), or to keep himself (herself) ordinarily clean and presentable; frequent need of adjustment of any special prosthetic or orthopedic appliances which by reason of the particular disability cannot be done without aid (this will not include the adjustment of appliances which normal persons would be unable to adjust without aid, such as supports, belts, lacing at the back, etc.); inability of claimant to feed himself (herself) through loss of coordination of upper extremities or through extreme weakness; inability to attend to the wants of nature; or incapacity, physical or mental, which

requires care or assistance on a regular basis to protect the claimant from hazards or dangers incident to his or her daily environment. . . . It is not required that all of the disabling conditions enumerated in this paragraph be found to exist before a favorable rating may be made. The particular personal functions which the veteran is unable to perform should be considered in connection with his or her condition as a whole. It is only necessary that the evidence establish that the veteran is so helpless as to need regular aid and attendance, not that there be a constant need.

38 C.F.R. § 3.352(a).

## IV. ANALYSIS

The question before the Court is whether a veteran who is in receipt of SMC under section 1114(l) for the loss of use of both feet qualifies to receive the maximum rate of SMC under section 1114(o) by establishing that he has also suffered disability under conditions that would entitle him to SMC under subsection (l) on account of being in need of regular aid and attendance – when the veteran's need for aid and attendance is the result of his only qualifying service-connected disability[2] – the loss of use of both feet – *and* subsection (o) prohibits a "condition [from] being considered twice in the determination." Alternatively stated, can the need for aid and attendance, in and of itself, constitute a qualifying condition when that need arises from the veteran's only service-connected disability that already entitles him to SMC under section 1114(l)? This is a matter of statutory interpretation, which the Court determines de novo. *See* 38 U.S.C. § 7261(a)(1); *Butts v. Brown*, 5 Vet.App. 532, 539 (1993) (en banc).

### A. Statutory Interpretation

"Statutory interpretation begins with the language of the statute, the plain meaning of which we derive from its text and structure." *Myore v. Nicholson*, 489 F.3d 1207, 1211 (Fed. Cir. 2007) (quoting *McEntee v. M.S.P.B.*, 404 F.3d 1320, 1328 (Fed. Cir. 2005); *see Sharp v. Shinseki*,

---

[2] As noted above, the appellant was granted entitlement to service connection for hearing loss, evaluated as 60% disabling, and tinnitus, evaluated as 10% disabling, effective March 29, 2010. The RO also awarded a higher rate of SMC under 38 U.S.C. § 1114(p), effective March 29, 2010, based on the appellant's loss of use of both feet *and* additional service-connected disability (hearing loss) independently ratable at 50% or more. *See* 38 C.F.R. § 3.350(f)(3) (2010). Because these awards were granted after the Board's February 2009 decision here on appeal, the Court will refer solely to the appellant's loss of use of both feet for the purpose of its discussion.

23 Vet.App. 267, 271 (2009); *see also McGee v. Peake*, 511 F.3d 1352, 1356 (Fed. Cir. 2008); *Gardner v. Derwinski*, 1 Vet.App. 584, 586 (1991) ("Determining a statute's plain meaning requires examining the specific language at issue and the overall structure of the statute." (citing *Bethesda Hosp. Ass'n v. Bowen*, 485 U.S. 399, 403-05 (1998))), *aff'd sub nom. Gardner v. Brown*, 5 F.3d 1456 (Fed. Cir. 1993), *aff'd*, 513 U.S. 115 (1994). In reviewing "an agency's construction of the statute which it administers," a court must first ask "whether Congress has directly spoken to the precise question at issue." *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984). If so, the court and the agency must "give effect to the unambiguously expressed intent of Congress." *Id*. at 842-43.

Section 1114(l) provides five distinct ways for a veteran, "as the result of service-connected disability," to qualify for this rate of SMC: (1) Anatomical loss or loss of use of both feet; (2) anatomical loss or loss of use of one hand and one foot; (3) blindness in both eyes with 5/200 visual acuity or less; (4) being permanently bedridden; or (5) having "such significant disabilities as to be in need of regular aid and attendance." 38 U.S.C. § 1114(l). The "need of regular aid and attendance" in section 1114(l) must be the result of "such significant disabilities." 38 U.S.C. § 1114(l).

Section 1114(o) states that

if the veteran, as the result of service-connected disability, has suffered disability under *conditions* which would entitle such veteran to two or more of the rates provided in one or more subsections (l) through (n) of this section, no *condition* being considered twice in the determination, . . . the monthly compensation shall be $4,313.

38 U.S.C. § 1114(o) (emphasis added). The meaning of emphasized terms "conditions" and "condition," as well as the phrase "no condition being considered twice in the determination" is essential to the Court's resolution of the matter on appeal.

Both parties argue that the plain and unambiguous language of subsection (o) supports their respective positions. The appellant posits that each distinct way to receive an award of SMC under subsections (l), (m), and (n), *e.g.*, "the anatomical loss or loss or use of both hands," or "blindness in both eyes having only light perception," is a "condition" under subsection (o), which may not be considered twice when determining whether an award under (o) is warranted. Thus, he contends that

10

he is entitled to a higher rate of SMC under section 1114(o) because he has two qualifying conditions under subsection (l): loss of use of both feet *and* need for aid and attendance. Questioned at oral argument how he interprets the phrase "no condition being considered twice," the appellant stated that a veteran could not receive SMC at the (o) rate because he has loss of use of both feet *and* loss of use of both feet.

The Secretary asserts that entitlement to the higher rate under subsection (o) must be based on separate and distinct disabilities. The Secretary posits that subsection (o)'s use of the term "conditions" refers generally to a term such as "circumstances," and the latter use of the word "condition," refers to the underlying *disability or combination of disabilities*, such as anatomical loss, loss of use, or blindness, that entitles a veteran to a rate proscribed in subsections (l), (m), and (n) of 38 U.S.C. § 1114. At oral argument, the Secretary explained that under subsection (o) a veteran may receive the maximum rate if, for example, the veteran has the loss of use of both feet and sustained a separate service-connected disability, e.g., a traumatic brain injury, that requires aid and attendance.

The Court notes that nowhere in the statute does Congress define the terms "condition" or "conditions." Moreover, a review of section 1114, as a whole, reveals that Congress did not use either term in any subsection other than subsection (o). The statute's silence on the definition of "condition(s)," may appropriately be understood as Congress's having delegated this matter to the Secretary. *See U.S. v. Mead Corp.*, 533 U.S. 218, 226-27 (2001); *Chevron*, 467 U.S. at 843-44; *see also* 38 U.S.C. § 501(a) (providing that "[t]he Secretary has authority to prescribe all rules and regulations which are necessary or appropriate to carry out the laws administered by the department"). Therefore, because "condition" is not defined in the statute *and* the Secretary interprets that the structure of the statute to imply multiple meanings to the same term, the Court concludes that the language of the statute is ambiguous with respect to the precise issue presented by this appeal. *See Haas v. Nicholson*, 20 Vet.App. 257, 262 n.2 (2006) ("[S]tatutory ambiguity is not an absolute conclusion, but is a case-by-case determination as to whether the language answers the particular question presented. Hence, statutory language that plainly answers one question may still be ambiguous when applied to another."), *rev'd on other grounds, Haas v. Peake*, 525 F.3d 1168 (Fed. Cir. 2008).

11

B.  Regulatory Interpretation

Having concluded that the terms "condition" and "conditions" in section 1114(o) are ambiguous, the Court must turn to step two of the *Chevron* analysis, which requires the Court to defer to the Agency's authorized interpretation of the statute if "the agency's answer is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843; *see Fed. Express Corp v. Holowecki*, 552 U.S. 389, 395 (2008) ("[W]hen an agency invokes its authority to issue regulations, which then interpret ambiguous statutory terms, the courts defer to its reasonable interpretations."); *see also Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 665 (2007).  Providing *Chevron* deference to the Agency's construction of the statute does not require the Court to conclude that the "agency['s] construction was the only one it permissibly could have adopted . . . or even the reading the court would have reached if the question initially had arisen in a judicial proceeding." *Chevron*, 467 U.S. at 843 n.11.  The Secretary's interpretation will not be set aside unless it is "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law."  38 U.S.C. § 7261(a)(3)(A).

*1.  The Meaning of "Condition" and "No Condition Being Considered Twice"*

In reviewing the Secretary's regulation, the Court notes that sections 3.350(e)*(1)* and *(2)*, expressly use the terms "condition" and "conditions" in describing when a claimant would be entitled to a higher rate of SMC under section 1114(o).  38 C.F.R. §§ 3.350(e)(1) and (2).  The portion of the regulation that the appellant challenges, § 3.350(e)(3), uses *only* the term "disabilities," and does not use the term "condition" or "conditions."  Section 3.350(e)(3), entitled "Combinations," appears to specifically implement the statutory language of section 1114 (o), "no condition being considered twice in the determination," by stating:

> Determinations must be based upon separate and distinct disabilities.  This requires, for example, that where a veteran who had suffered the loss or loss of use of two extremities is being considered for the maximum rate on account of helplessness requiring regular aid and attendance, the latter must be based on need resulting from pathology other than that of the extremities.  If the loss or loss of use of two extremities or being permanently bedridden leaves the person helpless, increase is not in order on account of this helplessness.

38 C.F.R. § 3.350(e)(3).

12

The Secretary's interpretation of the term "condition" in section 1114(o) to mean "disability" is implemented by the first sentence of the regulation requiring that "[d]eterminations must be based upon separate and distinct disabilities." *Id.* The remainder of § 3.350(e)(3) describes when a veteran may and may not be entitled to a higher rate of SMC on account of helplessness requiring regular aid and attendance *and* has suffered the loss or loss of use of two extremities. The specific question the Court must address is whether the Secretary's regulation, which interprets the phrase "no condition being considered twice" to mean "no *disability* being considered twice" is a reasonable construction of the statute. *Chevron*, *supra*.

The purpose of an agency's regulation is to articulate the agency's interpretation of a statute, and to provide guidance on how to implement that statute. *See Morton v. Ruiz*, 415 U.S. 199, 231 (1974) ("The power of an administrative agency to administer a congressionally created . . . program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress."). Because the primary function of any regulation is to interpret the statute it implements, not mimic it, a regulation need not, and should not, parrot the statute it implements. This Court has held that regulatory language that "merely parrots the statutory language" has no interpretive value. *See Sharp*, 23 Vet.App. at 274 (finding that 38 C.F.R. § 3.4 (b)(2) (2009) "does not assist in the interpretation of section 1115 because it merely parrots the statutory language"); *see also Gonzales v. Oregon*, 546 U.S. 243, 257 (2006) ("[T]he existence of a parroting regulation does not change the fact that the question here is not the meaning of the regulation but the meaning of the statute."). Therefore, the absence of the word "condition" or "conditions" in § 3.350(e)(3) by itself does not render the Secretary's interpretation invalid. Instead, by explaining that determinations "must be based upon separate and distinct disabilities" § 3.350(e)(3) fulfills its primary function by giving instruction and meaning to the phrase "no condition being considered twice in the determination."

Thus, the Secretary asserts that § 3.350(e)(3), which instructs that SMC under section 1114(o) is to be granted to veterans who are in need of aid and attendance for a service-connected disability that is separate and distinct from the anatomical loss or loss of use or blindness that is already the subject of a rate of SMC under subsections (l) through (n), is consistent with the statute's

requirement that "no condition be considered twice in the determination." 38 U.S.C. § 1114(o).  The Secretary finds support for his position in the legislative history leading to the 1945 amendments to Veterans' Regulation No. 1(a), which permitted helplessness, for the first time, to be combined with other qualifying conditions for the maximum rate of SMC.[3]

The Secretary points out that in July 1945, the Veterans Administration Administrator, General Frank T. Hines, submitted VA's legislative proposal to Congress urging that helplessness be included as a basis upon which the maximum rate of SMC could be awarded.  *See* 91 Cong. Rec. 7880-81 (1945).  In a letter to Congress, the Administrator explained:

> The maximum rate, as a result of including helplessness as one of the entitling multiple disabilities, is intended to cover, in addition to obvious losses and blindness, transverse myelitis with loss of use of both legs and loss of anal and bladder sphincter control, generally resulting from severance of the spinal cord in action or incident to airplane or motorized military equipment crashes; also the loss of use of two extremities with near blindness and absolute deafness, *or* with severe multiple injuries *outside the useless extremities*, these conditions being construed as loss of use of two extremities and helplessness.

*Id*. at 7881 (emphasis added).

---

[3]  Prior to the 1945 amendment, a veteran was entitled to receive the maximum rate

> [i]f the disabled person, as the result of service incurred disability, has *suffered the anatomical loss or loss of use* as provided in subparagraphs (l) to (n), inclusive, of Part I of paragraph II of this Regulation, . . . which conditions under subparagraphs (l) to (n), entitled him to two or more of the rates provided in those subparagraphs, *no specified condition being considered twice in the determination*, the monthly pension shall be $250.00.

Veterans' Regulation No. 1(a), pt. I, para. II(o) (1939) (emphasis added).  The 1945 amendment provided, in pertinent part, that

> [i]f the disabled person, as the result of service incurred disability, has *suffered disability under conditions* which would entitle him to two or more of the rates provided in one or more of the subparagraphs (l) to (n), inclusive, of part I, paragraph II of this Regulation, *no condition being considered twice in the determination*, . . . , the monthly pension shall be $300.00.

Veterans' Regulation No. 1(a), pt. I, para. II(o) (1945) (emphasis added).

14

The same congressional record contains a chart the Administrator submitted to Congress setting forth the then-current and proposed amounts for each level of SMC. The chart specified that the maximum rate of SMC would be awarded for "'[d]ouble total' disability which was defined as a 'total' disability, along with helplessness 'from *other pathology*, including blind and deaf.'" Secretary's Br. at 13-14 (quoting 91 Cong. Rec. at 7884) (emphasis added). It is undisputed that the 1945 amendments intended to broaden the conditions that could be combined to warrant an award of the maximum rate. The Administrator's explanation to Congress and the chart he submitted reflect that to give effect to the statutory language that "no condition be[] considered twice in the determination," VA envisioned that the maximum rate would be available when the veteran suffered from the loss or loss of use of two extremities, with helplessness arising from an additional service-connected disability, *other than* the loss or loss of use of two extremities.

On September 20, 1945, Congress amended the Veterans' Regulations "to provide additional rates of compensation or pension and remedy inequalities as to specific service-incurred disabilities in excess of total disability." Pub. L. No. 79-182 (1945). In doing so, Congress adopted what is now subsection (o), as proposed by VA. The lack of a statutory definition for the term "condition" in subsection (o) left a gap to be filled by the Agency – and as noted above – the history provided by the Secretary shows that VA has, since its inception, viewed the inclusion of helplessness as a qualifying condition for the maximum rate to require that the need for aid and attendance arise from pathology *other* than that for which the claimant is already in receipt of SMC. While "reliance on long-standing agency practice must be tempered with some caution in the veterans context," *see Gardner v. Brown*, 513 U.S. 115, 120 (1994) (refusing *Chevron* deference to the Agency's longstanding interpretation that was contrary to the plain language of the statute), it is not prohibited. *See Disabled Am. Veterans v. Sec'y of Veterans Affairs*, 419 F.3d 1317, 1323 (Fed. Cir. 2005) (distinguishing *Gardner* under circumstances showing that Congress ratified and authorized the Board's longstanding practice); *see generally N.L.R.B. v. Bell Aerospace Co. Div. of Taxation*, 416 U.S. 267, 275 (1974) (noting that an established principle of statutory construction permits a court to "accord great weight to the long standing interpretation placed on a statute by an agency charged with its administration . . . especially . . . where Congress has reenacted the statute without pertinent change"); *Money v. Office of Pers. Mgmt.*, 811 F.2d 1474, 1477 (Fed. Cir. 1987) (stating

15

that "[t]he longstanding interpretation placed on a statute by the agency charged with its administration should be followed unless there are compelling indications that it is wrong").

In this case, the Court finds that the history provided by the Secretary, Congress's repeated reenactment of subsection (o) without pertinent change,[4] together with the deference owed to an agency's reasonable interpretation of a statute it seeks to implement, compels the Court to conclude that the requirement in 38 C.F.R. § 3.350(e)(3) that "[d]eterminations to be based upon separate and distinct disabilities" is a reasonable and valid interpretation of 38 U.S.C. § 1114(o). *See Lorillard v. Pons*, 434 U.S. 575, 580 (1978) ("Congress is presumed to be aware of administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without [relevant] change."); *see also Paralyzed Veterans of Am. v. Sec'y of Veterans Affairs*, 345 F.3d 1334, 1340 (Fed. Cir. 2003) ("[W]here the application of customary canons of statutory construction points in opposite directions, we resort to the *Chevron* principle." (citing *Nat'l Org. of Veterans' Advocates v. Sec'y of Veterans Affairs*, 260 F.3d 1365, 1377 (Fed. Cir. 2001))); *DeBoard v. Principi*, 18 Vet.App. 357, 364 (2004) (stating "where the meaning of a statutory provision is ambiguous, the Court must take care not to invalidate otherwise reasonable agency regulations simply because they do not provide for a pro-claimant outcome in every imaginable case"). The regulation's reference to "separate and distinct disabilities" resolves any ambiguity in the statutory language "no condition being considered twice" and makes clear that the maximum rate under subsection (o) is available only when the veteran's entitlement to two or more rates under subsections (l) through (n) is based on separate service-connected disabilities.

Additional support for the Secretary's interpretation can be found in the statute itself. Subsection (m) specifically provides for a higher rate of SMC when "the veteran, as the result of service-connected disability . . . has suffered blindness in both eyes, rendering such veteran significantly disabled as to be in need of regular aid and attendance." 38 U.S.C. § 1114(m); *cf.* 38 U.S.C. § 1114 (k), (l) (providing lower rates of SMC if a veteran, as the result of service-

---

[4] The legislative history of section 1114 shows that in addition to numerous cost-of-living adjustments to the rates prescribed therein, subsection (o) has undergone additional amendment to the statutory language, without change to the pertinent language in dispute. *See, e.g.* Veterans' Benefits Act of 2010, Pub. L. 111-275, § 601(a)(3), 124 Stat. 2864.

connected disability has suffered "blindness of one eye, having only light perception" or "is blind in both eyes, with 5/200 visual acuity or less").  A comparison of the rates of compensation provided by Congress for veterans who have suffered varying degrees of blindness demonstrates that when Congress intended to provide a higher rate for a condition – blindness – when that *same* condition also resulted in the need for aid and attendance, Congress knew how to do so.  At the same time, Congress generally provided in subsection (o) that the maximum rate may be awarded where the veteran establishes entitlement to two or more of the rates provided in subsections (l) through (n), so long as "no condition [is] considered twice in the determination."  38 U.S.C. § 1114(o).  Although this distinction may seem somewhat arbitrary that a veteran who suffers blindness in both eyes *and* is in need of aid and attendance as a result of that blindness is entitled to a higher rate of compensation (although at the "(m)" rate, not the maximum) than a veteran who suffers the loss of use of both feet *and* is in need of aid and attendance as a result of the loss of use of both feet, Congress expressly devised progressively increasing rates of SMC in subsections (l) through (o) based upon its determination of what conditions were more disabling.  Against this backdrop, the Court cannot find the Secretary's interpretation, which prohibits SMC at the maximum(o) rate when the need for aid and attendance arises from the *same* pathology that otherwise entitles the veteran to an award of SMC at a rate provided in subsections (l) through (n), unreasonable.  38 C.F.R. § 3.350(e)(3).  Although the Court is sympathetic to the appellant's situation, his remedy lies with Congress, not this Court.  *See Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 981 (2005) ("If a statute is ambiguous, and if the implementing agency's construction is reasonable, *Chevron* requires a federal court to accept the agency's construction of the statute, even if the agency's reading differs from what the court believes is the best statutory interpretation." (citing *Chevron*, 467 U.S. at 843-44, and n.11)).

### 2. The Meaning of "Conditions"

The Secretary contends that section 1114(o)'s use of the term "conditions" refers to a term such as "circumstances."  Secretary's Br. at 15.  Thus, the Secretary reads the language in subsection (o) as meaning: "[I]f the veteran, as the result of service-connected disability, has suffered disability under [*circumstances* (in lieu of "conditions")] which would entitle the veteran to two or more of the rates under one or more subsections (l) through (n) of this section, no [*disability* (in lieu of

17

"condition")] being considered twice in the determination . . . the monthly compensation shall be . . . ." 38 U.S.C. § 1114(o). Although we are mindful of the basic canon of statutory construction that "identical terms within an Act bear the same meaning,"*see Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 479 (1992), we also recognize that "'[m]ost words have different shades of meaning and consequently may be variously construed, [even] when [they are] used more than once in the same statute or . . . section.'" *Envtl. Def. v. Duke Energy Corp.*, 549 U.S. 561, 574 (2007) (quoting *Atl. Cleaners & Dyers, Inc. v. United States*, 286 U.S. 427, 433 (1932)). Thus, "[a] given term in the same statute may take on distinct characters from association with distinct statutory objects calling for different implementation strategies." *Id.*

As noted above, by regulation, VA has interpreted subsection (o) to require that determinations be based upon "separate and distinct disabilities," 38 C.F.R. § 3.350(e)(3), and that interpretation is entitled to *Chevron* deference. Clearly, ascribing identical meaning to "condition" and "conditions" in subsection (o) would lend itself to a nonsensical reading of subsection (o) as stating: "If the veteran, as the result of service-connected disability, has suffered disability under [*disability*] . . . " 38 U.S.C. § 1114(o). Because such a reading would lead to an absurd result, the Court is not constrained to resolve the ambiguity of the singular and plural use of the same noun in subsection (o) by attributing the same meaning to them regardless of their context.

The Court notes that the Secretary's interpretation of "condition*s*" is supported by consulting a dictionary to ascertain the term's "ordinary meaning." *See Nielson v. Shinseki*, 23 Vet.App. 56, 59 (2009) (noting that it is "commonplace to consult dictionaries to ascertain a term's ordinary meaning"). The noun "condition" in its plural form may be defined as "attendant circumstances." *See* MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 240 (10th ed. 1999); *see also* WEBSTER'S NEW WORLD DICTIONARY 255 (3rd college ed. 1988) (defining "circumstances" as "conditions surrounding and affecting a person"). In the context of subsection (o), applying this definition to "conditions" reasonably resolves the ambiguity of the statutory term. *See Chevron*, *supra; see generally Mead Corp.*, 533 U.S. at 234-35 (noting that "*Chevron* did nothing to eliminate *Skidmore's* holding that an agency's interpretation may merit some deference whatever its form, given the 'specialized experience and broader investigations and information' available to the agency'" (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 139 (1944))). Thus, in recognition of the

18

fact that "most words have different shades of meaning" and can be "variously construed" the Court agrees with the Secretary that the term "conditions" in subsection (o) refers generally to "circumstances."

Accordingly, the Court holds that a claimant who is in receipt of SMC cannot establish entitlement to a second rate of SMC under section 1114(l) based on the need for aid and attendance – and, hence, a higher rate of SMC under section 1114(o) – unless the claimant's need for aid and attendance arises from a disability *other* than that for which the claimant is already in receipt of SMC.

## C. Application To Case

The appellant here is in receipt of SMC under section 1114(l) for loss of use of both feet. He does not dispute that his need for aid and attendance results from his loss of use of both feet. Because section 1114(l) requires the need for aid and attendance to be the result of "such significant disabilities," any second award of SMC under section 1114(l) for aid and attendance would necessarily be based on the appellant's loss of use of both feet. *See Howell v. Nicholson*, 19 Vet.App. 535, 538 (2006) (holding that the "[t]he plain and unambiguous language of section 1114(l) requires that a claimant be in need of regular aid and attendance 'as the result of service-connected disability'" (quoting 38 U.S.C. § 1114(l)). Since section 1114(o) precludes conditions from "being considered twice" in determining entitlement to two or more rates under sections 1114(l) through (n), and the Court concluded above that the Secretary's regulation, requiring determinations to be based on separate and distinct disabilities, is a valid interpretation of subsection (o), the appellant's loss of use of both feet cannot satisfy the requirement for SMC under section 1114(l) for both the loss of use of both feet *and* for being in need of aid and attendance *as a result of the loss of use of both feet*. Because the appellant is not entitled to a second rate of SMC under section 1114(l) based on the need for aid and attendance as a result of the loss of use of both feet, the Court must affirm the Board's February 5, 2009, decision, insofar as the Board denied entitlement to the higher rate of SMC under section 1114(o). In addition, because the appellant is not entitled to a higher rate of SMC under section 1114(o), his argument for an even higher rate of SMC under section 1114(r)(1) is moot.

D. Secondary Service Connection

The appellant raises two alternative arguments for remand. As noted above, the appellant argues that remand is warranted because the Board failed to consider whether his non-service-connected stroke, which the Board recognized as a condition affecting his need for aid and attendance, is aggravated by his service-connected cold injury and should constitute a second entitling condition under section 1114(o). *Id.* at 22-26 (citing *Allen*, *supra*). He states that the Court should remand the matter to enable the Board to "determine whether [his] service-connected loss of use of his feet aggravates his non-service-connected disabilities and whether this aggravation qualifies him for an additional [SMC] award under § 1114(l), (o), (r)(1)[,] and § 3.352(a)." *Id.* at 26. At oral argument, the appellant identified three pages in the record of proceedings, which, he asserts, reasonably raise a claim that his cold injury aggravated his stroke. *See* R. at 48, 49, and 151. The Secretary countered that the appellant did not previously raise a claim for service connection on a secondary basis and that the documents relied on by the appellant fail to reasonably raise an allegation that his stroke was caused by or related to his service-connected cold injury. The Court agrees.

Although the record reflects that the appellant mentioned "left sided[d] weakness deteriorating at present, [with] limited use of left hand and arm needed to propel [his] wheelchair" (R. at 151) and that he related his inability to propel his wheelchair to a stroke suffered in 1997 (R. at 49), none of the documents indicate an intent to apply for VA benefits for his stroke, or in any way attribute the stroke to his service-connected cold injury. "Although the Board must interpret a claimant's submissions broadly, 'the Board is not required to conjure up issues that were not raised by the claimant.'" *Brokowski v. Shinseki*, 23 Vet.App. 79, 85 (2009) (quoting *Brannon v. West,* 12 Vet.App. 32, 35 (1998)); *see also Robinson v. Shinseki*, 557 F.3d 1355, 1361 (Fed. Cir. 2009) ("[C]laims which have no support in the record need not be considered by the Board."); *Criswell v. Nicholson*, 20 Vet.App. 501, 503-04 (2006) ("It follows logically that where there can be found no intent to apply for VA benefits, a claim for such benefits has not been reasonably raised."). Accordingly, because the appellant has not identified any documents in the record that reasonably raise a claim that his stroke was aggravated by his service-connected cold injury, the Board did not err by failing to address this theory of entitlement to benefits. *See Robinson*, *Brokowski*, and

20

*Criswell*, all *supra.* If the appellant believes that the residuals of his cold injury aggravate his stroke condition, he is free to pursue that claim at the RO, and initiate an appeal from any adverse determination.

E. Higher Rate of SMC Under Section 1114(p)

The appellant's second argument for remand is that he is entitled to a higher rate under subsection (p), which allows for an intermediate rate or a full higher rate where a veteran's "service-connected disabilities exceed the requirements for any of the rates prescribed in this section." Appellant's Br. at 27-28. The Secretary argues that subsection (p) was not applicable to the appellant's claim at the time of the Board's decision because 38 C.F.R. § 3.350(f) does not specify the appellant's condition as one of the instances in which the next higher rate or an intermediate rate may be awarded. Secretary's Br. at 22.

In this instance, the Court agrees with the appellant that the Board erred when it failed to consider his entitlement to a higher rate of SMC under subsection (p). *See Schafrath v. Derwinski*, 1 Vet.App. 589, 592-93 (1991) (holding that the Board is required to discuss in its decision all "potentially applicable" provisions of law and regulation) (citing 38 U.S.C. § 7104(a)). Subsection (p) provides for half- or full-step increases to the next higher rate in subsections (l) through (n) for a veteran whose condition *exceeds* the requirements of his current rate, but does not qualify for the next higher rate. 38 U.S.C. § 1114(p).

Here, there is no dispute that the Board favorably found that the appellant's "residuals of a cold injury . . . render [him] wheelchair bound and result in [his] being unable to get around by himself or perform several activities of daily living, including bathing, without aid and attendance of another." R. at 4. It cannot reasonably be disputed that a veteran who has suffered the loss of use of both feet *and* is in need of regular aid and attendance of another is more disabled than a veteran who has suffered the loss of use of both feet *but* does not require the aid and attendance of another. While the appellant's condition does not warrant the assignment of the maximum (o) rate because of the statutory prohibition that "no condition be[] considered twice in the determination," it appears that the appellant's overall service-connected condition *exceeds* the requirements of subsection (l) in that he has suffered *both* the loss of use of both feet *and* is with such significant disability that he requires the aid and attendance of another.

21

In its decision, the Board discussed only section 1114(l) and (o). Therefore, it is not apparent that the Board considered the potential applicability of section 1114(p). This failure to consider the appellant's eligibility for a higher rate of SMC constitutes remandable error. *See AB v. Brown*, 6 Vet.App. 35, 38 (1993) (holding that claimants on both original claims and claims for increased disability are "presumed to be seeking the maximum benefit allowed by law and regulation"). The Court is not persuaded by the Secretary's argument that the appellant is not entitled to a higher rate under subsection (p) solely because his condition is not one of the enumerated instances provided in 38 C.F.R. § 3.350(f). Nothing in the statute or the regulation indicates that the list provided in § 3.350(f) is intended to be exclusive, nor does the Secretary provide any support for that reading of the regulation. *See Martin v. Occupational Safety & Health Review Comm'n*, 499 U.S. 144, 156 (1991) ("'[L]itigation positions' are not entitled to deference when they are merely appellate counsel's 'post hoc rationalizations' for agency action advanced for the first time in the reviewing court."). The Court will therefore remand the matter to the Board to consider in the first instance whether the appellant's overall service-connected disability picture *exceeds* the requirements of section 1114(l) such that he is entitled to an intermediate rate or a full higher rate under section 1114(p).

On remand, the appellant is free to submit additional evidence and argument on the remanded matters, and the Board is required to consider any such relevant evidence and argument. *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002) (stating that, on remand, the Board must consider additional evidence and argument in assessing entitlement to benefit sought); *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order). The Court has held that "[a] remand is meant to entail a critical examination of the justification for the decision." *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991). The Board must proceed expeditiously, in accordance with 38 U.S.C. § 7112 (requiring Secretary to provide for "expeditious treatment" of claims remanded by the Court).

## V. CONCLUSION

After consideration of the appellant's and the Secretary's pleadings, and a review of the record, the Board's February 5, 2009, decision is AFFIRMED IN PART and VACATED IN PART, and the vacated matter is REMANDED for further proceeding consistent with this decision.

KASOLD, *Chief Judge*, concurring in part, dissenting in part. Congress explicitly authorized in 38 U.S.C. §1114 (o) higher benefits for veterans with two "conditions" listed in subsections (l) through (n) of the same statute, provided no "condition" is considered twice in the determination. Although the Secretary agreed at oral argument that the loss of both feet does not regularly warrant aid and attendance,[5] the Board found that Mr. Breniser's service-connected loss of both feet was such that he was in need of regular aid and attendance, two conditions listed in subsection (l) (i.e., loss of both feet and regular aid and attendance). Thus, under the plain reading of 38 U.S.C. §1114 (o), Mr. Breniser is entitled to higher benefits. Yet, today the majority sanction a longstanding regulation, previously existing in "splendid isolation," that is in clear contravention of the statute. *Brown v. Gardner*, 513 U.S. 115 (1994) (noting the "splendid isolation" in which VA regulations existed for many years). This we should not do for the very same reasons stated in *Brown v. Gardner*.

The Secretary recognizes his regulation contravenes the statute, and this is most succinctly demonstrated by his need to substitute words for those chosen by Congress. Although Congress uses the word "disability" throughout section 1114 and only uses the word "condition" (and its plural) in subsection (o), the Secretary argues that Congress really meant to use "disability" instead of "condition." Such re-drafting of legislation should not be condoned. *Bradley v. Peak*, 22 Vet.App. 280, 291 (2008) ("'"Congress expresses its intent through the language it chooses" and that the choice of words in a statute is therefore deliberate and reflective.'" (quoting *Shoshone Indian Tribe v. United States*, 364 F.3d 1339, 1347 (Fed. Cir. 2004) (quoting *INS v. Cardoza-Fonseca*, 480 U.S. 421, 433 n.12, 436 (1987)))); *see also United States v. LaBonte*, 520 U.S. 751, 757 (1997) ("[W]e assume that in drafting this legislation, Congress said what it meant."); *Gardner*, *supra* (rejecting a longstanding regulation that imposed a negligence requirement that was not in the statute); *Barrett v. United States*, 423 U.S. 212, 217 (1976) ("Congress knew the significance and meaning of the language it

---

[5] *See* 38 C.F.R. § 3.352(a) (2011) (listing the criteria for being in need of "aid and attendance": such as the inability to dress oneself, inability to keep oneself clean, inability to adjust a prosthetic or orthopedic appliance that a normal person would be able to adjust without aid, inability to feed oneself, inability to attend the wants of nature, and the incapacity to protect oneself).

employed . . . . Had Congress intended to confine [the statute], it would have so provided, just as it did in other sections.").

The majority find support for the Secretary's regulation in legislative history, but this support is elusive. First, legislative history cannot trump legislation. *See, e.g., Van Wersch v. Dep't of Health & Human Servs.*, 197 F.3d 1144, 1152 (Fed. Cir. 1999) (holding that congressional intent, as expressed in legislative history, cannot "trump the irrefutably plain [statutory] language that emerged when Congress actually took pen to paper"). Second, the legislative history here is ambiguous at best, and any ambiguity in the text would be resolved in the veteran's favor. *Cf. Nat'l Org. of Veterans' Advocates, Inc. v. Sec'y of VA*, 260 F.3d 1365, 1378 (Fed. Cir. 2001) ("[I]t is a well-established rule of statutory construction that when a statute is ambiguous, 'interpretive doubt is to be resolved in the veteran's favor.'" (quoting *Gardner*, 513 U.S. at 118)). The legislative history provides no clear elaboration on the statute's use of the word "condition." Rather, the legislative history primarily sheds light on Congress's overarching purposes for implementing subsection (o), which were to (1) provide additional rates of compensation for veterans with "specific service-incurred disabilities in excess of total disability," 91 CONG. REC. at 1780, and (2) make "helplessness" compensable, Memorandum from O.W. Clark, Assistant Adm'r, Veterans Admin., to Frank T. Hines, Adm'r, Veterans Admin. (May 23, 1994). Congress's intent, if anything, reflects its intent to provide benefits to our veterans based on their disabilities. Succinctly stated, nothing evinces an intent to deny a veteran needing aid and attendance due to a serious service-connected disability such as loss of both feet from receiving a greater benefit than a veteran who had loss of both feet but no need for aid an attendance.

The majority's concern that the phrase "no condition being considered twice" would have no meaning if not rewritten as the Secretary desires is unfounded. As written by Congress, the phrase is clear and has clear meaning. *See Bd. of Governors of the Fed. Reserve Sys. v. Dimension Fin. Corp.*, 474 U.S. 361, 368 (1986) ("The traditional deference courts pay to agency interpretation is not to be applied to alter the clearly expressed intent of Congress."); *see also Chevron U.S.A. Inc. v. Nat'l Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984). For example, benefits are provided for the loss of both feet in subsection (l) and for the loss of both legs in subsection (m). The veteran with loss of both legs is not entitled to the higher benefit in subsection (o) because he has loss of

24

both legs, which includes loss of both feet.  There are multiple, similar conditions in subsections (l) through (n) that Congress precluded from being considered twice under subsection (o).

For the reasons stated above, I dissent from the majority's holding that Mr. Breniser is not entitled to a higher rate of SMC under 38 U.S.C. § 1114(o).

However, I agree with the majority that the Board, having denied benefits under subsection (o), erred in not considering benefits under subsection (p), which could provide an equal or lesser benefit – although this issue could be mooted if Mr. Brensier were awarded benefits under subsection (o).