# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 22-1018

MARGARET LASKA, APPELLANT,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued August 15, 2023                    Decided September 6, 2024)

*Amy F. Odom,* with whom *Zachary M. Stolz* and *April Donahower*, all of Providence, Rhode Island, were on the brief for the appellant.

*Brian S. Carey, Appellate Attorney*, with whom *Catherine C. Mitrano, Acting General Counsel; Mary Ann Flynn, Chief Counsel;* and *Megan C. Kral, Deputy Chief Counsel*, all of Washington, D.C., were on the brief for the appellee.

Before BARTLEY, *Chief Judge*, and FALVEY and LAURER, *Judges*.

BARTLEY, *Chief Judge*: Margaret Laska, surviving spouse of veteran Herbert N. Haskell, appeals through counsel a January 27, 2022, Board of Veterans' Appeals (Board) decision that denied entitlement to special monthly compensation (SMC) for traumatic brain injury (TBI) under 38 U.S.C. § 1114(t) (hereafter the (t) rate or SMC(t)).  Record (R.) at 5-12.  This appeal is timely, and the Court has jurisdiction to review the Board decision pursuant to 38 U.S.C. §§ 7252(a) and 7266(a).  Oral argument was held at the University at Buffalo School of Law in Buffalo, New York. *See Haskell v. McDonough*, No. 22-1018, Oral Argument (hereinafter Oral Argument), available at https://www.youtube.com/watch?v=J0PV8FOO4oM.  The Court thanks the law school for its hospitality in hosting judges, law clerks, and counsel.

This matter was referred to a panel of the Court to address whether the Secretary exceeded section 1114(t) by imposing a regulatory requirement in 38 C.F.R. § 3.352(b)(2) that a veteran show the need for a higher level of care to qualify for SMC(t).  We conclude that the statute is clear as to the need for regular aid and attendance and that the regulation is invalid.  Accordingly, the Court will set aside § 3.352(b)(2), vacate the January 2022 Board decision, and remand the matter for additional development, if necessary, and readjudication consistent with this decision.

## I. BACKGROUND

Mr. Haskell served on active duty in the U.S. Marine Corps from March 1966 to December 1967.  R. at 4505 (DD 214).  While serving in Vietnam in May 1967, he was knocked unconscious by a rocket propelled grenade blast and sustained several shrapnel wounds, including to his head. R. at 5300 (December 2009 VA examination report), 5901 (July 1968 VA examination report). He underwent a craniectomy and was diagnosed with posttraumatic encephalopathy manifesting in left cerebellar dysfunction, depression, headaches, and memory loss.  R. at 5901-02 (July 1968 VA examination report).  Following service, Mr. Haskell was awarded service connection for encephalopathy with left cerebellar dysfunction and loss of part of the skull with retained metallic bodies, R. at 5918-19 (February 1968 rating decision); later he was awarded SMC under 38 U.S.C. § 1114(s) due to being permanently housebound, R. at 5219-32 (February 2009 rating decision); and SMC under 38 U.S.C. § 1114(l) based on the need for regular aid and attendance, R. at 4904-10 (September 2014 rating decision).

In May 2017, Mr. Haskell filed a claim for service connection for TBI.  R. at 2703 (VA Form 21-526EZ).  With his claim, he submitted neurologist Dr. Lawrence J. Robinson's March 2017 opinion that the veteran's TBI required regular supervision by health-care professionals, a remote alert system for emergencies, and supervision for chronic medication administration and personal safety.  R. at 2712, 2721.  In June 2017, Mr. Haskell's primary care doctor, Dr. Peter J. Kurzweil, reported that the veteran's spouse, Ms. Laska, a retired psychologist,[1] assisted with his activities of daily living.  R. at 2649 (Dr. Kurzweil's statement); *see* R. at 2704 (May 2017 VA Form 21-4138).

At an August 2017 VA TBI examination, a neurologist opined that Mr. Haskell's in-service TBI caused headaches, hearing loss, loss of sense of direction, and mood changes that interfere with work and instrumental activities of daily living.  R. at 2536, 2539.  Ms. Laska reported that the veteran needed constant reminders for medication and safety, recalling that he had left the stove on and the refrigerator door open.  R. at 2533.  But in a November 2017 addendum opinion, the examiner stated that "it would be speculative to determine the level of care the veteran requires based on the information obtained" during the TBI examination.  R. at 1125.  Meanwhile, a VA

---

[1] The Board referred to Ms. Laska as a psychiatrist in the January 2022 decision on appeal.  R. at 11. However, Ms. Laska described herself as a retired psychologist in her July 2017 statement. R. at 2638. The distinction is not determinative in this case.

contract nurse practitioner noted in October 2017 that the veteran could not leave home without a family member but that he was able to perform the activities of daily living so long as he received reminders to take his medications.  R. at 1328.

In November 2017, VA continued the total evaluation for encephalopathy as a residual of TBI and denied SMC(t).  R. at 1119-21.  Mr. Haskell appealed.  R. at 1085 (January 2018 statement), 1087 (January 2018 VA Form 21-0958).  In February 2019, Ms. Laska reported that she has to assist the veteran performing activities due to his balance, confusion, and memory loss problems caused by TBI.  R. at 1040.  She specified that Mr. Haskell's balance problems cause falls and injuries, that he cannot drive or attend medical appointments alone because of memory problems, and that he requires assistance for safety and proper medication administration.  R. at 1038-40.

Following a July 2019 Statement of the Case, R. at 999-1027, Mr. Haskell timely perfected his appeal, R. at 916 (August 2019 VA Form 9).  In February 2020, he submitted an opinion from Dr. Damond J. Logsdon, a licensed psychologist and clinical neuropsychologist, that in the absence of regular aid and attendance Mr. Haskell would require hospitalization, nursing home care, or some other institutional care.  R. at 838-39.  Dr. Logsdon noted that Mr. Haskell was unable to care for himself, dose his medication, drive, perform activities of daily living, and manage his finances, and explained that the veteran's safety would be compromised without additional assistance.  *Id*.  In March 2020, the Board remanded for a VA medical examination and opinion to determine whether a higher level of in-home care was being provided or whether the veteran's spouse provided such care under regular supervision of a licensed health-care professional.  R. at 817-24, 825-26.

Pursuant to that remand order, the veteran attended two VA examinations in April 2021.  At the TBI examination, Mr. Haskell reported that he was totally dependent on his spouse.  R. at 241.  The examining neurology physiatrist noted that the veteran was severely impaired by memory, attention, concentration, or executive functioning deficits, R. at 242, and was often disoriented to two or more of the four aspects of orientation, R. at 243.  The neurology physiatrist concluded that the veteran's assessment that he is totally dependent on his spouse was consistent with medical records. R. at 248.  The following day, at a medical examination to determine the need for aid and attendance, a nurse practitioner opined that Mr. Haskell did not require nursing

3

home care, but did require mild to moderate assistance with dressing, bathing, grooming, and keeping himself ordinarily clean and presentable.  R. at 196-97.

In the January 2022 decision on appeal, the Board found that Mr. Haskell required regular aid and attendance but not at-home, daily, personal services provided by a licensed health-care professional or under the supervision of a licensed health-care professional.  R. at 5, 11-12.  The Board stated that Ms. Laska is a retired psychiatrist[2] but distinguished her from a medical doctor, registered nurse, or licensed physical therapist, and concluded that the care she provided constituted regular aid and attendance rather than higher-level care.  R. at 11 (citing the April 2021 VA nurse practitioner's examination report).  The Board therefore denied entitlement to SMC(t) because Mr. Haskell had not shown the need for both aid and attendance and higher-level care as mandated by § 3.352(b).  R. at 11-12.

Mr. Haskell appealed to this Court but, unfortunately, passed away while his case was pending.  The Court thereafter granted Ms. Laska's unopposed motion to substitute as the appellant.

## II. GOVERNING LAW

In addition to basic rates of disability compensation, Congress has made SMC available to veterans whose service-connected disabilities result in "additional hardships above and beyond those contemplated by VA's schedule for rating disabilities."  *Breniser v. Shinseki*, 25 Vet.App. 64, 68 (2011); *see* 38 U.S.C. § 1114(k)-(t).  The rate of SMC "varies according to the nature of the veteran's service-connected disabilities."  *Moreira v. Principi*, 3 Vet.App. 522, 524 (1992).

As relevant here, section 1114(l) provides SMC if a veteran, among other things, is "permanently bedridden or with such significant disabilities as to be in need of regular aid and attendance."  38 U.S.C. § 1114(l).  Sections 1114(m) through 1114(p) provide progressively higher levels of SMC for progressively more debilitating combinations of anatomic loss, blindness, and deafness.  38 U.S.C. §§ 1114(m)-(p).  Section 1114(r)(1) provides SMC for a veteran who, in addition to qualifying for lower levels of SMC based on anatomic loss, blindness, and deafness, needs regular aid and attendance.  38 U.S.C. § 1114(r)(1).

Section 1114(r)(2) provides the highest level of SMC, for a veteran who needs a higher level of care than regular aid and attendance, and in the absence of such care would require

---

[2] *See* footnote 1.

4

hospitalization, nursing home care, or other residential institutional care.  38 U.S.C. § 1114(r)(2).
Section 1114(r)(2) defines this higher-level care as "personal health-care services, provided on a
daily basis in the veteran's home by a person who is licensed to provide such services or who
provides such services under the regular supervision of a licensed health-care professional."  *Id*.

Section 1114(t), the provision at issue here, provides SMC in the same amount described
in section 1114(r)(2) when a veteran (1) is in need of regular aid and attendance for service-
connected residuals of TBI; (2) is not eligible for compensation under subsection (r)(2); and (3) in
the absence of such "regular aid and attendance," would require hospitalization, nursing home care,
or other residential institutional care.  38 U.S.C. § 1114(t).

VA implemented section 1114(t) in 38 C.F.R. § 3.350(j), which generally restates section
1114(t) and directs the reader to § 3.352 for the criteria for determining the necessary level of care.
Section 3.352(b)(2) in turn currently provides that a veteran may be paid compensation at the
SMC(r)(2) rate for service-connected TBI when the requirements spelled out in section 1114(t) are
met *and* the veteran requires "a higher level of care as defined in [38 C.F.R. § 3.352(b)(3)]."
38 C.F.R. § 3.352(b)(2)(ii) (2024).  And § 3.352(b)(3) defines the need for a higher level of care
as the need for "personal health-care services provided on a daily basis in the veteran's home by a
person who is licensed to provide such services under the regular supervision of a licensed health-
care professional."  38 C.F.R. § 3.352(b)(3).

### III. THE PARTIES' ARGUMENTS &
### THE SECRETARY'S CONCESSION OF ERROR

Ms. Laska argues that the Board erred in denying Mr. Haskell SMC(t) due to his lack of
need for higher-level care because the plain language of section 1114(t) does not require such a
need.  Appellant's Brief (Br.) at 4-5, 8, 14.  She therefore contends that the Secretary's
implementing regulation for SMC(t), § 3.352(b)(2), exceeds its authorizing statute by wrongly
imposing section 1114(r)(2)'s higher-level care requirement into SMC(t).  Appellant's Br. at 9-12.
She asserts that "regular aid and attendance" as used in subsection (t) must carry the same meaning
that it does in subsection (l), as evidenced by Congress's deliberate choices, when amending
section 1114 in 2010 to address service-connected TBI, to use that existing language rather than
subsection (r)(2)'s "higher level of care" language and to include veterans with TBI who are not
eligible for SMC(r)(2).  Appellant's Br. at 9-12; Reply Br. at 5-6 (citing S. Rep. No. 111-71, at 18

5

(2009)). She asks the Court to invalidate the regulation, vacate the Board decision, and remand for the Board to correctly apply subsection (t). Reply Br. at 5, 7.

The Secretary argues that section 1114(t) is not clear on its face and that § 3.352(b)(2) validly defines the level of care required. Secretary's Br. at 6, 11.[3] He explains that subsections (r)(2) and (t) both contemplate impairment over and above regular aid and attendance because both provisions cite the need for residential institutional care in the absence of care at home. *Id*. at 11-16. He therefore asserts that, because subsection (t) clearly contemplates a higher level of care by referring to residential institutional care, § 3.352(b)(2) properly applies the higher level of care standard to SMC(t) cases. *Id*. He notes that the regular aid and attendance statute, 1114(l), does not refer to residential institutional care in the absence of aid and attendance, as does section (r)(2) and (t). *Id*. The Secretary argues that legislative history supports the distinction between the level of care required under subsection (l) and the level of care required under subsection (t). He contends that this distinction is evidenced by Congress's aim to treat veterans suffering from TBI the same as veterans entitled to subsection (r)(2) benefits, who suffer severe physical and locomotive impairments caused by anatomic or other loss. *Id*. at 17-19 (citing S. Rep. No. 111-71, at 17-18).[4]

While the Secretary defends his regulation, he concedes that remand is required for the Board to adequately discuss the April 2021 VA neurology physiatrist's finding that the veteran is totally dependent on his spouse and why the Board placed such high probative value on the April 2021 VA nurse practitioner's contrary findings. Secretary's Br. at 5-6, 10-11. In reply, Ms. Laska asserts that remand on this basis does not preempt or answer whether § 3.352(b)(2) conflicts with the plain text of section 1114(t). Appellant's Reply Br. at 2-4.

---

[3] Briefing and oral argument in this case occurred prior to the Supreme Court's June 2024 decision in *Loper Bright Enterprises v. Raimondo*, 144 S.Ct. 2244 (2024). In *Loper Bright*, the Supreme Court overruled *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 104 S.Ct. 2778, 2792-93 (1984), which had directed courts to defer to reasonable agency interpretation of ambiguous statutes. *Id*. at 2273.

[4] During oral argument the Secretary contended that in adding 1114(t) Congress merely intended to address an SMC eligibility problem for veterans with TBI, not to address entitlement to SMC benefits. Oral Argument at 28:18-30:20. Because the Secretary did not raise this argument in his brief, the Court will not address it. *See Carbino v. Gober*, 10 Vet.App. 507, 511 (1997) (declining to review a new argument raised in a reply brief), *aff'd sub nom. Carbino v. West*, 168 F.3d 32, 34 (Fed. Cir. 1999).

6

## IV. ANALYSIS

### A. The Board's Reasons or Bases

We begin with the Secretary's concession of error. The Board's determinations as to the appropriate degree of disability, including entitlement to SMC, are findings of fact subject to the "clearly erroneous" standard of review. 38 U.S.C. § 7261(a)(4); *see Breniser v. Shinseki*, 25 Vet.App. 64, 68 (2011); *Smallwood v. Brown*, 10 Vet.App. 93, 97 (1997). The Board must support its findings on any material issue of fact and law with adequate reasons or bases. 38 U.S.C. § 7104(d)(1); *Pederson v. McDonald*, 27 Vet.App. 276, 286 (2015). To comply with this requirement, the Board must analyze the credibility and probative value of evidence, account for evidence it finds persuasive or unpersuasive, and provide reasons for its rejection of material evidence favorable to the claimant. *Caluza v. Brown*, 7 Vet.App. 498, 506 (1995), *aff'd per curiam*, 78 F.3d 604 (Fed. Cir. 1996) (table).

As the Secretary concedes, the Board failed to support the assignment of greater probative value to the April 2021 VA nurse practitioner's findings than the April 2021 VA neurology physiatrist's finding that the veteran is totally dependent on his spouse. The Board, as factfinder, is responsible for assessing the weight to be afforded to conflicting medical opinions, and it is not error for the Board to favor one opinion over another, provided it supports that determination with adequate reasons or bases. *Owens v. Brown*, 7 Vet.App. 429, 433 (1995); *Guerrieri v. Brown,* 4 Vet.App. 467, 471-73 (1993). Because the Board failed to explain the assignment of higher probative value to the April 2021 VA nurse practitioner's findings, it did not provide the legally required reasons or bases for its decision. *See Caluza*, 7 Vet.App. at 506. The Court therefore accepts the Secretary's concession that remand is required for the Board to provide reasons or bases for its assignment of relative probative value to the medical opinions of record. *See Tucker v. West*, 11 Vet.App. 369, 374 (1998) ("Generally, where the Board has incorrectly applied the law, failed to provide an adequate statement of reasons or bases for its determinations, or where the record is otherwise inadequate, a remand is the appropriate remedy.").

However, this conclusion does not resolve the parties' primary dispute regarding the requirements of section 1114(t) and the validity of § 3.352(b)(2). Because the Board would otherwise be bound by that regulation on remand, the Court will now address those matters. *See Bolds v. McDonough*, No. 22-2484, __ Vet.App. __, __, 2024 WL 3369993, at *4 (July 11, 2024); *Delrio v. Wilkie*, 32 Vet.App. 232, 240 (2019).

7

B. Relevant Statutory Language

"Courts interpret statutes, no matter the context, based on the traditional tools of statutory construction." *Loper Bright*, 144 S.Ct. at 2268. "Courts must also exercise their independent judgment in deciding whether an agency has acted within its statutory authority." *Id*. at 2273. The Board's interpretation of a statute is a question of law that the Court reviews de novo. *Butts v. Brown,* 5 Vet.App. 532, 539 (1993) (en banc).

In determining the meaning of a statutory provision, "'we look first to its language, giving the words used their ordinary meaning.'" *Cowan v. McDonough*, 35 Vet.App. 232, 238 (2022) (quoting *Artis v. Dist. of Columbia*, 583 U.S. 71, 83 (2018)); *see Frederick v. Shinseki*, 684 F.3d 1263, 1269 (Fed. Cir. 2012). Additionally, "'the plain meaning of any statutory provision must be determined in light of the statutory scheme as a whole, the specific context in which the word or provision at issue is used, and the broader context of the statute as a whole'." *Mattox v. McDonough*, 34 Vet.App. 61, 67 (2021) (quoting *Hornick v. Shinseki*, 24 Vet.App. 50,52 (2010)). Finally, legislative history may help clarify or confirm the meaning of statutory provisions. *See, e.g., Alleman v. Principi*, 349 F.3d 1368, 1371-72 (Fed. Cir. 2003) (consulting the legislative history despite finding the statute clear). The Court will address each of these tools of statutory construction in turn.

*1. The Plain Language of Subsection 1114(t) and Its Place in the Statutory Scheme*

Subsection (t) definitively specifies that the level of care needed for SMC(t) is the need for regular aid and attendance. Section 1114(t) states:

> If any veteran, as the result of service-connected disability, *is in need of regular aid and attendance* for the residuals of TBI, is not eligible for compensation under subsection (r)(2), and *in the absence of such regular aid and attendance* would require hospitalization, nursing home care, or other residential institutional care, the veteran shall be paid, in addition to any other compensation under this section, a monthly aid and attendance allowance equal to the rate described in subsection (r)(2) . . . .

38 U.S.C. § 1114(t) (emphases added).

The foregoing establishes three basic eligibility requirements for SMC(t): a veteran must (1) need regular aid and attendance for the residuals of service-connected TBI, (2) be ineligible for SMC(r)(2), and (3) need some type of residential institutional care in the absence of regular aid and attendance. *Id*. The first requirement explicitly sets the level of care for SMC(t) as the need for regular aid and attendance, and the rest of the subsection does not mention or reference a higher

level of care.  38 U.S.C. § 1114(t).  Thus, contrary to the Secretary's contention, subsection (t) is not silent as to the level of care required; instead, it is clear and specific that the necessary level of care is the need for regular aid and attendance.

Moreover, the level of care specified in subsection (t)—the need for "regular aid and attendance"—explicitly matches the language in subsection (l), not the higher-level care required in subsection (r)(2).  *Compare* 38 U.S.C. §§ 1114(l), (t), *with* 38 U.S.C. § 1114(r)(2).  The term "regular aid and attendance" is well understood, *see* 38 C.F.R. § 3.352(a), and the Secretary does not dispute that term's ordinary meaning.  Instead, despite subsection (t)'s repeated use of "regular aid and attendance," he argues that where subsection (t) refers to a veteran being ineligible for subsection (r)(2) and in need of institutional residential care, the statute creates ambiguity as to the level of care required for SMC(t).  Secretary's Br. at 15-16.  But that argument is inconsistent with the text and structure of section 1114(t)—specifically and section 1114 overall.

Subsection (t)'s second requirement references subsection (r)(2) not to specify the level of care needed for SMC(t), but to indicate who is eligible to receive SMC(t)—namely, veterans who do *not* qualify for SMC(r)(2).  38 U.S.C. § 1114(t).  This explicit reference to subsection (r)(2) thus distinguishes that subsection from subsection (t) rather than borrowing from it.  So, too, does subsection (t)'s use of the "need of regular aid and attendance" language used in subsection (l).  Where, as here, Congress uses identical terms in different parts of the same statute, courts should give the same meaning to each use of that term.  But the Secretary's interpretation of subsection (t) requires the Court to do the opposite—to ascribe the same meaning to different terms within the same statute (need for regular aid and attendance and need for higher level care)—which courts should generally avoid.  *See Russello v. United States*, 464 U.S. 16, 23 (1983) (noting that the Court "refrain[s] from concluding . . . that the differing language in the two subsections has the same meaning in each" and "should not presume to ascribe this difference to a simple mistake in draftsmanship").  Contrary to the Secretary's contention, reading subsection (t)'s reference to subsection (r)(2) as specifying those who are eligible to receive SMC(t), rather than as defining the level of care necessary to receive SMC(t), brings harmony to the statute as a whole.  *See Meeks v. West*, 12 Vet.App. 352, 354 (1999) ("'[E]ach part or section [of a statute] should be construed in connection with every other part or section so as to produce a harmonious whole.'" (quoting 2A N. SINGER SUTHERLAND ON STATUTORY CONSTRUCTION § 46.05 (5th ed.1992))), *aff'd*, 216 F.3d 1363 (Fed. Cir. 2000).

Further, although subsection (t)'s third requirement borrows from the language of subsection (r)(2), by referencing the need for "hospitalization, nursing home care, or other residential institutional care" "in the absence of such regular aid and attendance," it does not reference subsection (r)(2)'s requirement of a higher level of care. 38 U.S.C. § 1114(t). This is significant because, "'[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion. *Russello*, 464 U.S. at 23 (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir.1972)). Here, Congress expressly specified a higher level of care in subsection (r)(2), but not subsection (t). Given this deliberate choice by Congress, we will not read into section 1114(t) an additional higher-level requirement that is not apparent on its face or consistent with the statutory scheme as a whole. *See Field v. Mans*, 516 U.S. 59, 67 (1995) ("[A]n express statutory requirement here, contrasted with statutory silence there, shows an intent to confine the requirement to the specified instance.") (citing *Gozlon–Peretz v. United States*, 498 U.S. 395, 404 (1991)).

Indeed, reading subsection (t) as requiring a different level of care for TBI makes sense in the overall SMC framework. Congress, in drafting subsection (t), might have amended subsection (r)(2) to include service-connected TBI residuals if it intended for subsection (r)(2)'s requirement of a higher level of care to apply to TBI as it does to the currently required levels of anatomic loss, blindness, or deafness. But Congress created a separate provision, with different criteria, for veterans with service-connected TBIs who are "in need of regular aid and attendance." 38 U.S.C. § 1114(t). And although Congress used subsection (r)(2)'s residential institutional care language in subsection (t), it specified in subsection (t) that some type of residential institutional care would be needed "in the absence of such regular aid and attendance." 38 U.S.C. § 1114(t). Whereas, in subsection (r)(2), Congress specified that such care would be "in the absence" of higher-level care. 38 U.S.C. § 1114(r)(2). Again, Congress's explicit inclusion of "higher level of care" in subsection (r)(2) and its use of a different standard in subsection (t), the need for "regular aid and attendance," reinforces the conclusion that SMC(t) does not require higher-level care.

During oral argument, the Secretary attempted to demonstrate a further lack of clarity in subsection (t) by asserting that the statute's plain language produces absurd results. He concedes that "when read literally," the statute only requires that a veteran with service-connected TBI need "regular aid and assistance [sic] and, absent [such assistance], would require hospitalization or

10

other institutional care." Oral Argument at 31:02. The absurd result he alleges is that, without a requirement of a higher level of care, a veteran receiving SMC(t) would be compensated at the (r)(2) level and receive the same payment as a veteran with a supposedly greater level of disability. This is an unpersuasive argument. It overlooks Congress's intent to compensate the cognitive and psychologic manifestations of TBI at the same level as the anatomic loss, blindness, and deafness contemplated by SMC(r)(2), as discussed in part IV. B.2. below.

The Secretary eventually acknowledged as much. Later in oral argument, the Secretary specifically conceded that this is not an absurdity and then argued that implementation of the plain language of the statute would be "against current policy" or inconsistent with the overall purpose of the system of disability compensation, which is to award the same level of compensation to veterans with the same level of disability. *See* Oral Argument at 34:40-36:23. The Court finds no absurdity in this result and finds no inconsistency between the plain language of subsection (t) and the overall system of disability compensation and special monthly compensation. The Secretary's desired policy of requiring higher-level care for SMC(t) is at odds with the plain language that Congress used in choosing to compensate the disabling cognitive, psychologic, and other effects of TBI at the same rate as disabilities required for entitlement under section (r)(2). *See* 38 U.S.C. § 1114(t) ("[T]he veteran shall be paid, in addition to any other compensation under this section, a monthly aid and attendance allowance equal to the rate described in subsection (r)(2).").

Section 1114, as a whole, can logically be read to give the same meaning to "regular aid and attendance" in both subsection (l) and the first requirement of subsection (t), as modified with the third requirement of needing "hospitalization, nursing home care, or other residential institutional care" in the absence of regular aid and attendance. Unlike the Secretary's strained interpretation of the text and structure of section 1114(t), this reading comports with the plain language of subsection (t) and harmonizes that provision with the rest of the statute. *See Gazelle v. McDonald*, 27 Vet.App. 461, 464 (2016) ("[S]tatutes must be considered as a whole and in the context of the surrounding statutory scheme.") (citing *King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991).

### 2. The Legislative History of Section 1114(t)

Although the plain language of subsection (t) is clear, an examination of section 1114(t)'s legislative history confirms our plain language analysis. *See Alleman*, 349 F.3d at 1371-72.

In separately designating subsection (t) for TBI, Congress sought to recognize the unique cognitive and psychological effects of TBI, as distinct from the medical needs related to anatomic loss, blindness, and deafness that are contemplated by subsection (r)(2). Prior to amending section 1114 to include subsection (t), the Senate Committee noted that veterans with TBI are not always provided the same level of compensation as a veteran with physical disability, and that this should be corrected by considering "medical or non-medical assistance." S. Rep. No. 111-71, at 12, 17-18. The Senate Committee highlighted that veterans with TBI may require 24-hour care, supervision for safety, assistance with most higher-level activities, or prompting or much longer time to perform activities of daily living than they did pre-injury. *Id*. at 18. According to the Senate Committee, veterans with TBI not only need assistance with tasks they can no longer perform, but also someone to facilitate tasks they cannot keep up with. *Id*. And the Senate Committee made clear that such assistance can be provided by a family member rather than a licensed health-care professional. *Id*.

Ms. Laska correctly points out that upon legislating section 1114(r)(2) in 1978, Congress imposed the requirement that eligible veterans need "hospitalization, nursing home care, or other residential institutional care" in the absence of higher-level care. Appellant's Br. at 10-11; Pub L. No. 95-479, 92 Stat. 1560 (Oct. 18, 1978). In 1978, Congress defined the need for a higher level of care as involving daily, personal, health-care services by a licensed health-care professional. *Id*. Congress declined to impose that same requirement of higher-level care in 2010 when legislating subsection (t). Pub L. No. 111-275, 124 Stat. 2864 (Oct. 13, 2010). As explained, this omission is to be read as intentional. *See Russello*, 464 U.S. at 23.

The Senate Committee's report reflects that Congress's intent in adding subsection (t) was to allow veterans with TBI to achieve a monthly aid and attendance allowance in consideration of care that is often overlooked because it is "non-medical." S. Rep. No. 111-71, at 18. The Secretary concedes that the Senate Committee's primary concern in adding subsection (t) was to correct this oversight and treat like veterans alike, particularly by recognizing that the psychological and cognitive effects of TBI may also be so disabling as to require supervision and management warranting additional compensation. Secretary's Br. at 17. The policy adopted by Congress sought to recognize that TBI patients may require 24-hour care, supervision for safety, or assistance with most higher-level activities, and that these needs may be as disabling as the medical needs of veterans with anatomic loss, blindness, and deafness. S. Rep. No. 111-71, at 17-18. And nothing

12

in section 1114(t)'s legislative history reflects that Congress intended to impose a higher-level care requirement for SMC(t). To the contrary, that legislative history confirms our plain language and structural analysis that the level of care required for SMC(t) is the need for regular aid and attendance under (r)(1).

In conclusion, section 1114(t) specifies that the requisite level of care for entitlement to SMC(t) is the need for regular aid and attendance and the Secretary's implementing regulation, § 3.352(b)(2), requires the higher-level care described in 1114(r)(2). Thus, the regulation exceeds its authorizing statute and must be set aside as invalid. *See* 38 U.S.C. § 7261(a)(3) (providing that this Court "shall . . . hold unlawful and set aside" a regulation that conflicts with a statute); *see also Carr v. McDonough*, 33 Vet.App. 285, 290 (2021) (invalidating a VA regulation that conflicts with its authorizing statute). And the Board misapplied the statute by following the regulation's invalid requirement of a higher level of care. Accordingly, the Court will vacate the January 2022 Board decision and remand the matter for additional development, if necessary, and readjudication consistent with this decision. On remand, the Board should readjudicate the SMC(t) claim in accordance with the plain language of section 1114(t).

## V. CONCLUSION

Upon consideration of the foregoing, 38 C.F.R. § 3.352(b)(2) and the portion of the January 27, 2022, Board decision denying entitlement to SMC(t) are SET ASIDE, and the matter is REMANDED for further development, if necessary, and readjudication consistent with this decision.

13